[Crim. No. 12789. In Bank. June 24, 1970.]

In re FRANKLIN DEE COWANS on Habeas Corpus.

734

## Counsel

Albert D. Silverman, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, John C. Hamilton and James L. Markman, Deputy Attorneys General, for Respondent.

## Opinion

**TOBRINER, J.**—On June 9, 1964, petitioner, upon his plea of guilty, was convicted of assault with intent to commit murder (Pen. Code, § 217). The court denied probation and ordered petitioner's imprisonment. We issued an order to show cause upon petitioner's allegations that his plea of guilty resulted from confessions obtained without advising him of his right to remain silent and to counsel, and from the coercion exercised by the district attorney and petitioner's court-appointed counsel. We appointed the Honorable Victor Gillespie, Judge of the Superior Court of Imperial County, to act as referee.

Judge Gillespie conducted an evidentiary hearing and submitted his report. He found that petitioner made incriminating statements to Sergeant McCarty of the Ventura Sheriff's Department, without having first been advised of his right to counsel or to remain silent. He also found that petitioner gave incriminating statements to two court-appointed psychiatrists without having been advised of his right of silence. Judge Gillespie found, however, that petitioner's plea of guilty was neither the product of such incriminating statements nor of coercion exerted by either counsel or by any law enforcement officials. The record supports the referee's findings; it demonstates that the guilty plea resulted from the competent advice of petitioner's counsel. Counsel explained to petitioner that if he did not plead guilty to an assault with intent to murder he probably would be convicted of attempted murder, a more serious offense,[1] and might also be convicted on additional assault charges. We therefore discharge the order to show cause.

About 11:15 p.m. on April 19, 1964, Officers Hendrix and Clinton arrived at a residence near Fillmore, Ventura County; petitioner's mother,

---

[1] Assault with intent to commit murder is punishable by imprisonment from one to fourteen years. (Pen. Code, § 217.) Attempted murder is punishable by a term of not more than twenty years. (Pen. Code, §§ 190, 664.)

upon admitting them, told them that petitioner had been threatening her with a knife. Deputy Miller arrived a few minutes later. The mother, Mrs. Cowans, signed a complaint; the officers arrested petitioner. Holding a hunting knife in one hand and an open pocket knife in the other, petitioner confronted the officers, announcing: "You sons-of-bitches aren't going to take me." At that point petitioner's brother-in-law struck petitioner with a chair. Starting toward Officer Hendrix with the knives and saying, "I'll kill you, you son of a bitch," petitioner fell, and Deputy Miller struck petitioner with his gun. The officers than took petitioner to a hospital for examination.

Early the next day Deputy Sheriffs Hubbard and Steeno arrived at the hospital. Informed that X-rays showed that petitioner had incurred no fractures, they took petitioner to their car to transport him to the county jail. As Hubbard was opening the car door, petitioner grabbed Hubbard's pistol. When, in the ensuing encounter, the gun pointed toward Hubbard, petitioner pulled the trigger; Hubbard inserted the web of his hand between the hammer and the firing pin, preventing the gun from discharging. Hubbard and Steeno then subdued and handcuffed petitioner.

After petitioner's arrival at the jail Deputy Sheriff McCarty questioned him. This interrogation took place before the Supreme Court decision in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; petitioner was not advised of his constitutional rights. We have no record of the interrogation. Petitioner and McCarty give somewhat inconsistent accounts of it; the referee found that petitioner made incriminating statements relating to the incident which led to the original arrest, but no incriminating statements relating to the assault upon Deputy Sheriff Hubbard.

The district attorney filed a three-count complaint in the municipal court charging assault with intent to murder Hubbard and Steeno, and attempted escape. Petitioner waived the preliminary hearing. The district attorney then filed a two-count information in the superior court, omitting the attempted escape charge. To this information petitioner pleaded not guilty by reason of insanity. The court appointed Doctors Patterson and Bugh to examine petitioner. During these examinations petitioner gave both psychiatrists incriminating statements concerning the struggle with the two deputies but was not advised of his right to remain silent.

After the filing of the psychiatric reports, petitioner asked leave to enter a plea of not guilty, which the court granted. The district attorney then filed a second complaint in the municipal court, in seven counts, charging petitioner with the attempted murder of Hubbard, with various assaults upon Steeno, a Mrs. Bean, Mrs. Cowans, Hendrix, and Miller, and with attempted escape. The municipal court held petitioner to answer on three

counts: attempted murder of Hubbard, assault with a deadly weapon on Hendrix, and attempted escape. He pleaded guilty to assault with intent to commit murder upon Hubbard, a lesser included offense within the charge of attempted murder. The court dismissed the charge of assault upon Hendrix,[2] denied probation, and sentenced petitioner to prison.

■ *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], held that when a suspect in custody and under interrogation is denied the opportunity to consult with counsel, incriminating statements elicited during that interrogation may not be used against him. In *People* v. *Dorado* (1965) 62 Cal.2d 338, 351 [42 Cal.Rptr. 169, 398 P.2d 361], we held that the right to counsel at such an interrogation does not depend upon a request by the defendant. The principle of *Escobedo,* as explained in *Dorado,* applies to all cases in which the conviction was not final as of the date of the decision in *Escobedo,* June 22, 1964. (*In re Lopez* (1965) 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380]; *People* v. *Rollins* (1967) 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221].) In the instant case the court rendered its judgment on June 23, 1964, the day after the rendition of *Escobedo,* and therefore petitioner's statements to Sergeant McCarty could not properly have been admitted into evidence.

■ When petitioner made the incriminating admissions to the court-appointed psychiatrists, he was represented by counsel, but his counsel did not appear at the psychiatric interviews. Since the right to the presence of counsel at such interviews was not established until *In re Spencer* (1965) 63 Cal.2d 400, 410 [46 Cal.Rptr. 753, 406 P.2d 33],[3] we conclude that petitioner did not knowingly and intelligently waive that right. (*In re Spencer, supra,* 63 Cal.2d 400, 410-411.) In addition, the referee found that petitioner had not been advised of his right to remain silent and to refuse to speak to the psychiatrists. (See *People* v. *Strong* (1931) 114 Cal.App.

---

[2]The record does not disclose any disposition of the charge of attempted escape. Since, however, petitioner committed the assault with intent to commit murder while attempting to escape, he can only be punished for the more serious offense, which is the assault. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

[3]As we said in *In re Spencer, supra,* 63 Cal.2d 400, 403: "the presence of counsel at the psychiatric examination is not constitutionally required so long as the court does not permit the psychiatrist to testify at the guilt trial. If, however, defendant at such trial specifically places his mental condition into issue, the psychiatrist's testimony is admissible, provided that the court renders a limiting instruction that the jury should not regard the testimony as evidence of the truth of defendant's statements so related by the psychiatrist." In the instant case the referee found that the prosecution undertook the psychiatric examinations solely to evaluate petitioner's sanity, rather than to determine guilt, and did not intend to produce the psychiatrists as witnesses in the guilt trial. (See fn. 5, *infra*).

522, 530 [300 P. 84].) We conclude that the petitioner's admissions to the psychiatrists were also inadmissible to prove petitioner's guilt.

 The referee, however, found that petitioner's plea of guilty was free and voluntary, and that finding, although not conclusive, is entitled to great weight. (*In re Imbler* (1963) 60 Cal.2d 554, 562 [35 Cal.Rptr. 293, 387 P.2d 6].) The referee's holding finds support in the testimony of Mark Dees, petitioner's counsel in the 1964 proceedings, who, at the evidentiary hearing, explained the reason why he advised petitioner to plead guilty: "It appeared from the psychiatrists' report . . . that . . . we could not prevail with . . . a defense of insanity. I discussed with him the possibility of getting a private psychiatrist . . . to testify to his insanity. We determined, because of the lack of finances and just the fact that he probably was not insane, that this would not be successful. . . . In turning then to the facts of the case it was my opinion, because the police officers would make a far better witness . . . because he had no witnesses on his behalf other than himself, that his chances of prevailing, of not being convicted would be very slim indeed. . . I felt he would make a terrible witness on his own behalf. I felt his belligerency, his self-pity would show through. I felt we were facing a jury in Ventura County which would be far more prosecution-minded than one in some more urban jurisdiction. I saw simply nothing in the case that would give us any . . . reasonable chance whatsoever . . . of his being acquitted. I felt the case quite frankly was a sure loser, and I used that phrase in talking to him. . . ."

Petitioner's attorney further explained his reasons for counselling petitioner as to the advisability of working out a plea. "It seemed to me, particularly after the attempted murder count was filed, that the best thing I could do was to work out some sort of arrangement with the District Attorney whereby he would plead guilty to one count of assault with a deadly weapon and all the other charges, including those that arose out of the altercation in his parents' house before the assault on the police officers, would be dismissed. And that is just the arrangement we did work out."

At the evidentiary hearing Sergeant McCarty testified that petitioner's statements had related solely to the incidents at the residence; petitioner had said that he could not recall the assault upon Deputy Hubbard and made no incriminating statements concerning that matter. Although petitioner testified at the referee's hearing that he admitted to Sergeant McCarty the assault upon Deputy Hubbard, he was unable to recall with any specificity such admissions. The referee found in accord with McCarty's testimony.[4]

---

[4]At the evidentiary hearing, the deputy attorney general asked Mr. Dees, petitioner's former counsel, "Did you ever state to petitioner, to your knowledge, that the

The referee also found that the psychiatric examinations were undertaken for the sole purpose of determining petitioner's sanity, not to establish guilt; substantial evidence supports this finding.[5]

■ In summary, petitioner faced, apart from the effect of the incriminating statements, a strong prosecution case of guilt. The People did not even introduce the admissions at the preliminary hearing, and probably did not intend to call the psychiatrists as witnesses at trial since sanity was no longer in issue. The admissions to Sergeant McCarty did not encompass the attempted murder of Deputy Hubbard, the most serious of the charges against petitioner. We conclude that, as found by the referee, petitioner freely and voluntarily pleaded guilty; that the plea was independent of the incriminating statements and did not emanate from them. Petitioner therefore is not entitled to withdraw his plea. (*In re Seiterle* (1964) 61 Cal.2d 651, 657-658 [39 Cal.Rptr. 716, 394 P.2d 556].)

As we noted, *supra,* petitioner's second major contention is that his plea of guilty was coerced by the district attorney. Petitioner's counsel, Mr. Dees, and the district attorney initially reached an understanding that the People would proceed only on two counts of assault with intent to commit murder, that petitioner would not enter a general plea of innocence but only a plea of not guilty on grounds of insanity, and that petitioner would waive jury trial. When petitioner sought and obtained leave of court to enter a plea of not guilty, the deputy district attorney announced his intention to file additional charges.[6] After the preliminary hearing,

---

petitioner's confession—supposed confession to Sergeant McCarty would be evidence against him rendering his case hopeless?" Mr. Dees replied: "I said that his admissions at various times would—I think I made it clear to Mr. Cowans that the admissions he made would not help his case any. As I recall, he had made certain admissions either to McCarty or the arresting officer, 'I wish I'd killed you' or 'You are not going to take me to jail,' or 'If I got the gun it would be something different.' Well these hurt his case, and I told him that they did."

At the time petitioner talked to Sergeant McCarty petitioner was suffering from a head injury, and may have been intoxicated. Thus it is quite possible that petitioner later believed in good faith that he had confessed the assault on Deputy Hubbard to Sergeant McCarty, and communicated this belief to his counsel, but that in fact petitioner had made no such confession.

[5]Both psychiatrists testified at the evidentiary hearing, and both denied that they were ever asked by the district attorney to testify at the guilt phase of the trial. Dr. Bugh added that "it was my understanding . . . that I would not be subpoenaed for that purpose, and that if I was in court to give testimony, it would be restricted to the question of sanity. . . ."

[6]Petitioner and Mr. Dees characterize the deputy district attorney as "hostile," and petitioner asserts that after the court granted leave to enter a not guilty plea "the prosecuting attorney then exploded, and stated 'give him anything he wants your honor,' I am going to file additional charges tomorrow." The deputy district attorney denies any hostility and asserts that he simply stated his intention of filing a new complaint. The referee did not resolve the conflict in testimony, and it is not necessary for us to do so.

Mr. Dees and the district attorney agreed that petitioner could plead guilty to the charge of assault with intent to commit murder. Petitioner appeared in court and refused to plead guilty, but after talking with counsel he changed his plea to guilty.

Clearly, petitioner pleaded guilty most reluctantly; only his fear that he might be convicted of attempted murder apparently motivated that procedure.

■ A plea, however, does not become "involuntary" because a reluctant defendant acknowledges the strength of the case against him and the possible penalty which may ensue. The Supreme Court, in *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], stated: "We decline to hold . . . that a guilty plea is compelled and invalid . . . whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."[7] ([397 U.S. at p. 751 [25 L.Ed.2d at p. 758].)

The order to show cause is discharged and the petition for the writ of habeas corpus is denied.

Wright, C. J., McComb, J., Mosk, J., Burke, J., and Sullivan J., concurred.

---

[7]Once petitioner had repudiated the understanding that he would raise only the defense of insanity, he could not reasonably expect that the district attorney would still keep his part of the bargain. The record does not show that the district attorney threatened or filed such additional charges with the intention of coercing a guilty plea, or that the charges were not justified by the evidence. (See *Brady* v. *United States, supra,* 397 U.S. 742, 751 [25 L.Ed.2d 747, 758].)