[Crim. No. 14453. In Bank. Dec. 3, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE IRVEN WEST, Defendant and Appellant.

**COUNSEL**

Myers, Hawley, Morley & Moore and John W. Moore for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TOBRINER, J.**—We undertake here to confirm the legality of the plea bargain and to set up procedures for its acceptance or rejection in the strong light of full disclosure. In a day when courts strive to simplify trial procedures and to achieve speedier dispatch of litigation, we believe that the recognition of the legal status of the plea bargain will serve as a salutary timesaver as well as a means to dispel the procedural obscurantism that now enshrouds it. The grant of legal status to the plea bargain should enable the court in each case to reach a frank, open and realistic appraisal of its propriety.

Turning to the specific facts of this case, we note that defendant, charged with a violation of Health and Safety Code section 11530 (possession of marijuana), moved to suppress the incriminating evidence under Penal

Code section 1538.5. After the superior court denied that motion, defendant, with the consent of the district attorney, pleaded nolo contendere to a violation of Health and Safety Code section 11557 (opening or maintaining a place for the selling, giving away, or using of a narcotic), and the court accepted the plea.

Defendant now appeals under Penal Code section 1538.5, subdivision (m). We shall point out that this section permits a defendant, whose motion to suppress evidence has been denied, to plead guilty and then appeal, asserting the alleged unlawful seizure of evidence; he need not preliminarily seek a certificate of probable cause under Penal Code section 1237.5. We shall explain that although defendant pleaded nolo contendere rather than guilty, he may file an appeal under section 1538.5, subdivision (m). We point out, however, that the appeal must fail because defendant's charge as to the illegality of the search presents a direct conflict between his testimony and that of the police officer; the superior court resolved that issue against the defendant, and on appeal we must accept its determination.

As we shall explain more fully, the next question that arises is whether the Court of Appeal properly set aside defendant's conviction of a violation of Health and Safety Code section 11557, which was based upon his plea bargain. That court, on its own motion reversed the conviction on the ground that a violation of that section did not constitute a lesser included offense within section 11530, and that defendant, accused only of a violation of section 11530, could not plead to section 11557. We do not accept the position of the Court of Appeal; we uphold the validity of defendant's plea and the superior court's judgment based upon it.

We shall point out why we sustain the conviction: (1) a plea of guilty or nolo contendere does not become "involuntary" on the ground that defendant entered into it pursuant to an understanding with the district attorney that another and more serious charge would not be pressed; (2) a plea bargain, such as that in the present case, should be fully disclosed to the trial court and included in the record of the case; (3) a court may accept a plea of nolo contendere to a lesser offense reasonably related to the offense charged. The record here shows that defendant voluntarily entered a plea to section 11557, a drug offense reasonably related to section 11530; consequently, the court properly exercised its jurisdiction in accepting that plea.

1. *Defendant may appeal under Penal Code section 1538.5, subdivision (m), from a judgment of conviction entered upon a plea of nolo contendere.*

Although the Attorney General contends that defendant's appeal cannot withstand defendant's failure to request a certificate of probable cause under

Penal Code section 1237.5,[1] we do not regard such certificate as a precedent condition to a review of the search and seizure issue. Section 1538.5, subdivision (m), specifically provides that "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." The Attorney General concedes that this language permits a defendant who has pleaded guilty to seek appellate review of the validity of a search or seizure under section 1538.5 without first obtaining a cerificate of probable cause;[2] he contends, however, that the section does not apply to a defendant who is convicted after a plea of nolo contendere.

Although section 1538.5, subdivision (m) does not mention pleas of nolo contendere, Penal Code section 1016 expressly provides as to "nolo contendere" that "The legal effect of such plea shall be the same as that of a plea of guilty, but the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." ■ The clear language of this provision gives a plea of nolo contendere the same force and effect under section 1538.5, subdivision (m), as a plea of guilty. We conclude that since, under that section, defendant could, after a plea of guilty, appeal without a certificate of probable cause, defendant may so appeal following his plea of nolo contendere. (*People* v. *Warburton* (1970) 7 Cal.App.3d 815, 820-821 [86 Cal.Rptr. 894].)

We turn now to the merits of defendant's appeal under section 1538.5, subdivision (m) and point out that defendant failed to show the claimed illegality of the search which produced the marijuana.

2. *Defendant consented to the search in which the officer discovered marijuana in defendant's automobile.*

On October 18, 1967, about 8:40 a.m., Officer Pruden of the Mountain View Police Department noticed an automobile parked by a vacant field with "something bunched up in the front seat." He went to the car and rapped on the window, waking defendant. Defendant explained that he had

---

[1]Penal Code section 1237.5 provides that: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, except where: (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

[2]See *People* v. *Rose* (1968) 267 Cal.App.2d 648, 649 [73 Cal.Rptr. 349]; *Moran* v. *St. John* (1968) 267 Cal.App.2d 474, 477-478 [73 Cal.Rptr. 190].

been out late the previous night and had slept in the car to avoid disturbing the person with whom he was staying. Defendant said that he had borrowed the car from a friend; the officer then checked whether the car had been reported stolen, finding that it had not been so reported. When the officer asked defendant for identification, he replied that he had lost his wallet, producing, instead, a California Employment Office card bearing his name. The officer asked for further identification; defendant asserted that letters bearing his name were in the trunk of the car. Defendant and the officer then went to the rear of the car, and defendant opened the trunk.

According to Officer Pruden, defendant removed an article that resembled a shoe box without a lid, handed it to him, and said, "The papers are in here. You can take whatever you want." The officer removed some envelopes carrying defendant's name; within the box he saw a brown paper bag. Taking out the bag he began to open it, asking defendant, "What is in here?" Defendant answered, "Just some personal things. Nothing that will have my name on it." Simultaneously, however, the officer had opened the bag sufficiently to observe two clear plastic packets containing marijuana.

Defendant's testimony, not surprisingly, differed from that of the officer. Defendant testified that the officer ordered him to open the trunk and threatened to arrest him if he failed to produce further identification. Defendant attested that he then did open the trunk, removed a letter from the box, and handed the letter to the officer, who thereupon examined it. The officer then took other letters from the box and began searching through its contents. He picked up the paper bag and asked, "What's in this?" Defendant replied, "Some of my shaving gear." The officer then opened the bag and saw the marijuana.

■ The resolution of this conflict between the testimony of defendant and that of Officer Pruden must rest with the superior court. (Pen. Code, § 1538.5, subd. (c).) ■ "A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact." (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].) As the trier of fact, the superior court adjudges the credibility of the witnesses. (See Witkin, Cal. Criminal Procedures (1963) § 683.) Officer Pruden's testimony indicates that defendant consented to the search of the box and all of its contents, and that defendant did not withdraw this consent until the officer discovered the marijuana. By denying the motion to suppress, the superior court impliedly found this testimony to be true (Evid. Code, § 402, subd. (c)). Concluding that the seizure of the marijuana by Officer Pruden did not violate defendant's right to protection from unreasonable search and seizure, we must next determine the validity of defendant's conviction, which rested upon a plea bargain.

3. ■ *Defendant's plea of nolo contendere to Health and Safety Code section 11557 is valid, and the superior court had jurisdiction to accept that plea and pronounce judgment.*

When the instant case came before the court for trial on May 7, 1968, defendant's counsel announced that the district attorney would stipulate that "for purposes of this case section 11557 of the Health and Safety Code (opening or maintaining any place for the selling, giving away or using of a narcotic) is to be a lesser included offense of 11530 of the Health and Safety Code [possession of marijuana]." The deputy district attorney confirmed the stipulation; defendant then requested leave to withdraw his plea of not guilty to section 11530 and to plead nolo contendere to section 11557. The court addressed the defendant and verified the fact that he agreed to the stipulation and plea, understood the charge of violation of section 11557, knew of his constitutional rights, and had conferred with defense counsel. The court inquired of defendant whether "anyone made any promises or representations to you in order to . . . induce you to plead guilty to this alleged violation of section 11557?" Defendant answered, "No, sir." After the deputy district attorney consented to the plea, the court accepted it, referring the case to the probation officer for a report. On May 24, 1968, the court received the probation report, imposed a two-year suspended sentence, and granted probation.

Although defendant denied that any promises had induced his plea to section 11557, his counsel acknowledged on oral argument to this court that defendant pleaded to that offense as part of a plea bargain to avoid conviction under section 11530.

As of May 1968, a violation of section 11530 constituted a felony, which was punishable, in the absence of an allegation of a prior narcotic offense, by imprisonment from one to ten years. (Stats. 1961, ch. 274, § 7.) If defendant had committed no prior narcotic offense, a violation of section 11557 constituted a felony-misdemeanor, punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than ten years. Since defendant had not been charged with a violation of section 11557, and since no evidence in the record indicated defendant's guilt of that offense, the only purpose of the plea of nolo contendere to section 11557 must have been to afford the court the option of sentencing defendant as a misdemeanant.

■ Although the deputy district attorney did not dismiss the charge under section 11530, he stipulated that a violation of section 11557 was a lesser included offense within section 11530, thereby bringing into play the rule that "A conviction of the lesser [offense] is held to be a bar to prosecution for the greater." (*People* v. *Krupa* (1944) 64 Cal.App.2d 592, 598

[149 P.2d 416].) The trial court's acceptance of the plea and stipulation thus assured defendant that he could not be prosecuted for a violation of section 11530. We thus confront the problem of the proper status of the plea bargain and, in particular, of the actual plea bargain consummated here.

(a) ■ *A plea of guilty or nolo contendere is not rendered "involuntary" merely because it is the product of plea bargaining between defendant and the state.*

Plea bargaining has become an accepted practice in American criminal procedure, "an integral part of the administration of justice in the United States" (*Barber* v. *Gladden* (D.Ore. 1963) 220 F.Supp. 308, 314), "essential to the expeditious and fair administration of justice." (*People* v. *Williams* (1969) 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348].) "The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney." (American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (1967) p. 60 [hereinafter referred to as ABA Standards].)[3]

Both the state and the defendant may profit from a plea bargain. The benefit to the defendant from a lessened punishment does not need elaboration; the benefit to the state lies in the savings in costs of trial, the increased efficiency of the procedure, and the further flexibility of the criminal process. Numerous courts, commissions, and writers have recognized that the plea bargain has become indispensable to the efficient administration of criminal justice.[4] Professor Newman, in his study of plea bargaining, notes that "A steady flow of guilty pleas and the corresponding avoidance of the

---

[3]See generally *Brady* v. *United States* (1970) 397 U.S. 742, 752 [25 L.Ed.2d 747, 758, 90 S.Ct. 1463]; D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial (1966) [hereinafter referred to as "Newman"], the only comprehensive study of plea bargaining; President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967) pp. 134-136 (hereinafter referred to as "Challenge"); Alschuler, *The Prosecutor's Role in Plea Bargaining* (1968) 36 U.Chi.L.Rev. 50; Newman, *Pleading Guilty for Considerations: A Study of Bargain Justice* (1956) 46 J.Crim.L.C. & P.S. 780; Note, *Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas* (1964) 112 U.Pa.L.Rev. 865.

[4]See *Brady* v. *United States, supra,* 397 U.S. at p. 752; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919]; *People* v. *Williams* (1969) 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348]; *Hinckle* v. *State* (Del. 1963) 189 A.2d 432, 435; *Commonwealth* v. *Maroney* (1966) 423 Pa. 337 [223 A.2d 699, 704]; *Brown* v. *Beto* (5th Cir. 1967) 377 F.2d 950, 956; Challenge, p. 135; Newman, pp. 95-96; Comment, *Judicial Plea Bargaining* (1967) 19 Stan.L.Rev. 1082, 1086-1087; Main, *Only Radical Reform Can Save the Courts,* Fortune (Aug. 1970) pp. 110, 153; cf. *People* v. *Woltz* (1963) 222 Cal.App.2d 340 [35 Cal.Rptr. 160].

time, expense, and uncertainty of trials is important to the smooth functioning of most criminal courts. . . . Plea negotiation, with bargains duly honored, is a device necessary to administration if a steady flow of guilty pleas is to be maintained." (Newman, pp. 29, 39.)

Plea bargaining also permits the courts to treat the defendant as an individual, to analyze his emotional and physical characteristics, and to adapt the punishment to the facts of the particular offense. (See generally Newman, pp. 112-130.) In some cases, only the bargained reduction in the charge can enable the judge to exercise his discretion as to meaningful sentencing alternatives.[5] The ABA Standards note that "Conviction of the offense actually committed may result in severe restrictions on the sentencing judge's discretion; for example, the offense may carry a high mandatory minimum sentence or may not be probationable. Trial judges are extremely critical of such restrictions, as they feel that by 'accepting lesser pleas . . . [there may result] a finer adjustment to the particular crime and offender than the straight application of the rules of law would permit.' " (ABA Standards, p. 45, quoting in part from Breitel, *Controls in Criminal Law Enforcement* (1960) 27 U.Chi.L.Rev. 427, 432; see Challenge, p. 135; Newman, pp. 112-113.)

Despite the widespread use of plea bargains, however, guilty pleas entered pursuant to that practice were until recently constitutionally suspect.[6] (See

---

[5]The present case illustrates this use of plea bargaining to achieve a more just result. As of May 7, 1968, when defendant entered his plea, the punishment for possession of marijuana in the absence of an allegation of a prior narcotic offense was imprisonment in the state prison for one to ten years. (Stats. 1961, ch. 274, § 7.) Because of widespread public criticism of the undue harshness of this mandatory treatment of possession of marijuana as a felony, the Legislature on August 24, 1968, amended section 11530 to permit the court to hold that a violation of that section constituted a felony-misdemeanor (Stats. 1968, ch. 1465, § 1). In *People* v. *Francis* (1969) 71 Cal.2d 66, 75 [75 Cal.Rptr. 199, 450 P.2d 591], we held this amendment to be applicable to all cases in which judgment had not become final before its effective date. As of May 1968, however, the only method by which the court could classify and punish defendant as a narcotics misdemeanant was by means of a defendant's plea to some lesser offense, such as maintaining a place where narcotics are used, then classifiable as a misdemeanor.

[6]Courts upheld guilty pleas based on plea bargains in *United States* v. *Williams* (4th Cir. 1969) 407 F.2d 940, 948-949; *United States* v. *Follette* (2d Cir. 1968) 395 F.2d 721, 724-725; *Brown* v. *Beto* (5th Cir. 1967) 377 F.2d 950, 957; *Cortez* v. *United States* (9th Cir. 1964) 337 F.2d 699; *Sorrenti* v. *United States* (5th Cir. 1962) 306 F.2d 236, 239-240] *Kent* v. *United States* (1st Cir. 1959) 272 F.2d 795, 798-799 (dictum); *Martin* v. *United States* (5th Cir. 1958) 256 F.2d 345, 348-349; *Shelton* v. *United States* (5th Cir. 1957) 246 F.2d 571 (revd. on confession of error (1958) 356 U.S. 26 [2 L.Ed.2d 579, 78 S.Ct. 563]); *Ford* v. *United States* (E.D.Mo. 1969) 295 F.Supp. 1180; *Barber* v. *Gladden* (D.Ore. 1963) 220 F.Supp. 308, 314; *United States* v. *Miss Smart Frocks, Inc.* (S.D.N.Y. 1968) 279 F.Supp. 295, 299; *In re Cowans* (1970) 2 Cal.3d 733, 740 [87 Cal.Rptr. 499, 470 P.2d 635]; *People* v. *Guiden* (1958) 5 App.Div.2d 975 [172 N.Y.S.2d 640, 642] (dictum); *Commonwealth* v.

Newman, pp. 29, 41; Bongiovanni, *Guilty Plea Negotiation* (1969) 7 Duquesne L.Rev. 542, 543.) The rubric was that "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." (*Machibroda* v. *United States* (1962) 368 U.S. 487, 493 [7 L.Ed.2d 473, 478, 82 S.Ct. 510]; see *McCarthy* v. *United States* (1969) 394 U.S. 459, 466 [22 L.Ed.2d 418, 425, 89 S.Ct. 1166].) Consequently judges commonly inquired of defendants whether any promises had been made to induce them to plead guilty, and defendants, fearing that the court would invalidate the bargain, commonly responded in the negative.[7]

In *Shelton* v. *United States* (5th Cir. 1957) 242 F.2d 101, a three-judge panel of the Fifth Circuit held a guilty plea induced by prosecutorial promises to be involuntary. Judge Tuttle, dissenting, argued that the plea was voluntary and proposed the following rule: "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." (P. 115.)

The Fifth Circuit, in an en banc rehearing, adopted Judge Tuttle's views and upheld the guilty plea. (246 F.2d 571.) On petition for certiorari the United States Supreme Court noted confession of error by the Solicitor General and reversed per curiam. (356 U.S. 26 [2 L.Ed.2d 579] (1958).) The reversal did not specify the nature of the error and left the validity of bargained guilty pleas in doubt.[8]

---

*Maroney* (1966) 423 Pa. 337 [223 A.2d 699, 704-705]; cf. *In re Hawley* (1967) 67 Cal.2d 824 [63 Cal.Rptr. 831, 433 P.2d 919] (plea bargain does not show incompetency of counsel).

A guilty plea based on a plea bargain was held involuntary per se in *Shupe* v. *Sigler* (D.Neb. 1964) 230 F.Supp. 601, 606 (alternative holding). Other cases rejecting plea bargains although entered into by the prosecution have involved some additional invalidating element, such as improper pressure on the defendant from the trial judge (see *United States* ex rel. *Elksnis* v. *Gilligan* (S.D.N.Y. 1966) 256 F.Supp. 244, 253-255; *People* v. *Williams* (1969) 269 Cal.App.2d 879 [75 Cal.Rptr. 348]; cf. *People* v. *Beasley* (1970) 5 Cal.App.3d 617 [85 Cal.Rptr. 501]); Comment, *Judicial Plea Bargaining* (1967) 19 Stan.L.Rev. 1082), bargains struck between the district attorney and the defendant when defendant's counsel was not present (*Shupe* v. *Sigler, supra,* 230 F.Supp. at p. 606 (alternative holding); *Anderson* v. *North Carolina* (W.D.N.C. 1963) 221 F.Supp. 930, 934]; inadequate advice of counsel (*United States* v. *Rogers* (D.Conn. 1968) 289 F.Supp. 726, 729-730) or illusory promises by the prosecutor (*Dillon* v. *United States* (9th Cir. 1962) 307 F.2d 445, 449).

[7]For examples of typical dialogue between the defendant and the bench, see *United States* v. *Williams* (4th Cir. 1969) 407 F.2d 940, 947-948, fn. 11; Newman, p. 83.

[8]In *Martin* v. *United States* (5th Cir. 1958) 256 F.2d 345, 348-349, the Fifth Circuit, noting the Supreme Court's per curiam reversal of its decision in *Shelton,*

The recent decision of the United States Supreme Court in *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], settled these doubts and upheld the validity of the bargained guilty plea. In that case Brady contended that his plea of guilty, entered as part of an agreement to avoid imposition of the death penalty, was involuntary and should be set aside. The court rejected this contention, stating that the case could not be distinguished from an ordinary plea bargain (397 U.S. at p. 751 [25 L.Ed. 2d at p. 758].) The court then specifically adopted the rule proposed by Judge Tuttle in *Shelton* v. *United States, supra,* 242 F.2d at page 115. (397 U.S. at p. 755 [25 L.Ed.2d at p. 760].)[9]

Since 1957 California has provided by statute for a limited form of plea bargain; Penal Code section 1192.3 permitted a defendant who pled guilty to specify the punishment to the same extent that it could be specified by a jury, and provided that if the specification received the concurrence of the prosecution and the court, the punishment could not exceed that designated.[10] In 1970 the Legislature greatly expanded this statutory form of plea bargain by enacting section 1192.5, which permits the defendant to state the punishment to the extent it may be fixed by the court, and to specify the exercise of the court's power to grant probation or suspend sentence.[11] Although neither

decided that the *Shelton* test of voluntariness still stood; it rejected defendant's contention that bargained pleas of guilty were involuntary if induced by any promise by the prosecutor.

[9]The majority opinion, by Justice White, stated: "We decline to hold . . . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged. . . . [W]e cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correction system in a frame of mind which affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." (397 U.S. 742, 751, 753 [25 L.Ed.2d 747, 758, 759].)

The dissenting opinion of Justice Brennan contended that *Brady's* bargained plea of guilty was invalid because the capital sentence, which *Brady* sought to avoid by his plea, could not constitutionally be imposed under the subsequent Supreme Court decision of *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209]. (See 397 U.S. 799, 809-812 [25 L.Ed.2d at pp. 793, 799-800].)

[10]Section 1192.3 states that: "Upon a plea of guilty to an information or indictment for which the jury has, on a plea of not guilty, the power to recommend, the discretion of imposing, or the option to impose a certain punishment, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty. Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant cannot be sentenced to a punishment more severe than that specified in the plea." (Repealed and replaced by Pen. Code, § 1192.5, effective Nov. 23, 1970.)

[11]Section 1192.5, effective November 23, 1970, provides as follows:
"Upon a plea of guilty or nolo contendere to an information or indictment, the plea may specify the punishment to the same extent as it may be specified by the jury

section 1192.3 nor section 1192.5 encompass the form of plea bargain used in the present case, that is, the plea to a lesser offense without specification of punishment, their enactment demonstrates the growing legislative recognition and approval of plea bargaining.  ■  The procedure set forth in these sections provides guidelines which the trial court can utilize in receiving and considering plea bargains involving pleas to lesser offenses.

■  In the present case, defendant understood the consequences of his plea; he had the benefit of representation and advice of competent counsel; we find no misrepresentation or duress by counsel or the court. Thus, applying the standard of voluntariness propounded in *Shelton* v. *United States,* and approved by the Supreme Court in *Brady* v. *United States,* we conclude that defendant's plea to Health and Safety Code section 11557, although the product of an understanding that the state would not prosecute him for a violation of section 11530, was both voluntary and free from constitutional infirmity.

(b)  *Counsel should disclose any plea bargain to the court, and the terms of that agreement should become part of the record of the cause.*

So long as plea bargaining remained in the limbo of dubious legality, the practice was necessarily covert; the record was barren of anything more than the defendant's bland and vacuous assurance to the court that no threat or promise had induced his plea. Justice Peters has clearly set forth the ritualistic and questionable nature of the practice: "We have recognized that a substantial portion—probably the vast majority—of criminal cases are disposed of through the process of plea bargaining. (*In re Hawley,* 67 Cal.2d

---

on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea.

If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) The result, in such cases, is that the entry of the plea is a ritual. . . . A defendant who is expected to lie when the judge asks if a guilty plea is the result of a promise of leniency is in no position to engage in a forthright exchange with the same judges at the same time when the question is the defendant's understanding and relinquishment of his constitutional rights." (*In re Tahl* (1969) 1 Cal.3d 122, 138 [81 Cal.Rptr. 577, 460 P.2d 449] (dissenting opn. of Peters, J.)

The greatest danger of the current practice lies in its secretiveness.[12] "The major problem with the plea negotiation procedure is that it has not received full and realistic judicial approbation, thus forcing the negotiations to be carried on sub rosa." (Bongiovanni, *Guilty Plea Negotiation* (1969) 7 Duquesne L.Rev. 542, 543.) "[T]he chief loss to orderly administration of the criminal law which comes from bargaining for pleas of guilty . . . is that it is all extra-legal, secret and under cover." (Baker, *The Prosecutor-Initiation of Prosecution* (1932-1933) 23 J.Crim.L.C. & P.S. 770, 790.)

In view of the recent express approval of plea bargaining in *Brady* v. *United States, supra,* 397 U.S. 742, the justification for concealment of the bargain has disappeared; instead, the basis of the bargain should be disclosed to the court and incorporated in the record. We should exhume the process from stale obscurantism and let the fresh light of open analysis expose both the prior discussions and agreements of the parties, as well as the court's reasons for its resolution of the matter. As the court stated in *United States* v. *Williams* (4th Cir. 1969) 407 F.2d 940: "The matter is, after all, public business, and we deplore the hypocrisy of silent pretense that it has not occurred." (Pp. 948-949.) All courts, writers, committees, and commissions who have discussed the subject have recommended that the plea bargain be incorporated in the record of the case.[13] We note in particular the

---

[12]The result of such concealment is that the ordinary trial record will not reveal an unkept plea bargain or a plea induced by coercion or improper promises. (See Newman, p. 218; Challenge, pp. 135-136; *Commonwealth* v. *Maroney* (1966) 423 Pa. 337 [223 A.2d 699, 702].

[13]In addition to authorities cited in text, see *Bailey* v. *MacDougall* (4th Cir. 1968) 392 F.2d 155, 160; *Smith* v. *United States* (D.Md. 1967) 277 F.Supp. 850, 859; *In re Tahl* (1969) 1 Cal.3d 122, 132-133 [81 Cal.Rptr. 577, 460 P.2d 449], and dissenting opinion of Peters, J. at p. 138); *Commonwealth* v. *Maroney* (1966) 423 Pa. 337 [223 A.2d 699, 705-706]; ABA Standards, standards 1.5, 1.7; Newman, p. 30; Gentile, *Fair Bargains and Accurate Pleas* (1969) 49 B.U.L.Rev. 514, 518; Rubin, The Law of Criminal Correction (1963) p. 69; Thompson, *The Judge's Responsibility on a Plea of Guilty* (1960) 62 W.Va.L.Rev. 213, 221; Baker, *The Prosecutor-Initiation of Prosecution* (1932-1933) 23 J.Crim.L.C. & P.S. 770, 791.

Although some courts and writers have disapproved of plea bargaining (see *Shelton* v. *United States* (5th Cir. 1957) 242 F.2d 101 (opn. of Rives, J.); *Shupe* v. *Sigler* (D.Neb. 1964) 230 F.Supp. 601. 606; Alschuler, *The Prosecutor's Role in Plea Bargaining* (1968) 36 U.Chi.L.Rev. 50; Myhre, *Conviction Without Trial in the United States and Norway: A Comparison* (1968) 5 Houston L.Rev. 647; Thompson,

unanimous recommendation of the President's Commission on Law Enforcement and Administration of Justice: "If a negotiated agreement to plead guilty is reached, care should be taken by prosecutor and defense counsel to state explicitly all its terms. Upon the plea of guilty in open court the terms of the agreement should be fully stated on the record." (Challenge, p. 136; see ABA Standards, standards 1.5, 1.7.) ■ We hold that in every case in which a plea bargain is accepted, it should be recorded.

The selection of the method by which the plea bargain should become a part of the record must rest in the discretion of the trial court. ■ Without limiting that court to those we set forth, we note four possible methods of incorporation: (1) the bargain could be stated orally and recorded by the court reporter, whose notes then must be preserved or transcribed; (2) the bargain could be set forth by the clerk in the minutes of the court; (3) the parties could file a written stipulation stating the terms of the bargain; (4) finally, counsel or the court itself may find it useful to prepare and utilize forms for the recordation of plea bargains. Our citations to reports that do make specific recommendations (e.g., ABA Standards, standards 1.5 and 1.7) are not meant to preclude use of other methods of recording the bargain.

The recordation of the plea bargain will afford to the appellate court, if such bargain is later collaterally or directly questioned, a complete account of the proceedings. Such plea agreements and convictions are necessarily subject to attack; indeed, this court, as others, has set aside guilty pleas induced by improper or unkept plea bargains. Thus in *People* v. *Delles* (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629], we held that "[I]f a defendant pleads guilty as part of a bargain with an apparently authoritative and reliable public official . . . whereby he is assured of receiving in return for his plea probation, a lenient sentence, or some other form of special consideration, the trial judge may not impose judgment contrary to the terms of such bargain without affording the defendant an opportunity to withdraw his guilty plea."[14] Some cases, primarily in the federal courts, have held invalid even consummated bargains that were tainted by illusory promises or coercive tactics, or obtained in violation of defendant's right to counsel.[15]

---

*The Judge's Responsibility on a Plea of Guilty* (1960) 62 W.Va.L.Rev. 312), we have discovered no one who approves the practice of plea bargaining but advocates that the bargain be concealed from the trial court.

[14]See, e.g., *United States* v. *Wilkins* (2d Cir. 1960) 281 F.2d 707, 712; *People* v. *Wadkins* (1965) 63 Cal.2d 110, 113 [45 Cal.Rptr. 173, 403 P.2d 429]; *People* v. *Griggs* (1941) 17 Cal.2d 621 [110 P.2d 1031]; *Hinckle* v. *State* (Del. 1963) 189 A.2d 432, 435; cf. *State* v. *Ashby* (1964) 43 N.J. 273 [204 A.2d 1] (specific enforcement of plea agreement).

[15]See cases cited in footnote 6 *supra;* see also Comment, *Official Inducements to Plead Guilty: Suggested Morals for a Marketplace* (1964) 32 U.Chi.L.Rev. 167.

■ In the resolution of cases such as this, if the plea bargain does not compose part of the trial record, the truth of such allegations cannot be determined without an evidentiary hearing, a costly, time-consuming, and often unsatisfactory method of reconstructing the bargain.[16]

By requiring that the plea bargain be placed on the record, we facilitate the prompt and accurate dispostion of such appeals or collateral attacks.[17] "Such records are not readily impeached and constitute firm evidence long after the recollections of all parties involved in a case have dimmed." (Thompson, *The Judge's Responsibility on a Plea of Guilty* (1960) 62 W.Va.L.Rev. 213, 222.) In most cases an examination of the record will reveal the truth or falsity of the petitioner's allegations, thus obviating the need for an evidentiary hearing.[18]

■ The requirement of disclosure, as above set forth, will apply to such plea bargains as may be tendered to courts after the rendition of this decision; our holding does not affect, of course, any such pleas that have been accepted prior to that date.

Having discussed the desirability of affording the plea bargain validity and having emphasized the importance of its full disclosure on the record, we now examine the problem of what kind of bargain plea should be acceptable.

(c) ■ *The court may accept a bargained plea of guilty or nolo contendere to any lesser offense reasonably related to the offense charged in the accusatory pleading.*

■ A violation of Health and Safety Code section 11557[19] (opening or maintaining a place for the selling, giving away or using of a narcotic)

---

[16]In other cases the courts have denied a defendant an evidentiary hearing because he alleges only a promise made him by his counsel, and the record does not disclose corroboration of that promise by a responsible state officer. (See *People* v. *Gilbert* (1944) 25 Cal.2d 422, 443 [154 P.2d 657].) Yet so long as the courts countenance plea bargaining in a secretive, off-the-record style, the lack of corroboration in the record cannot come as a surprise.

[17]See *Bailey* v. *MacDougall* (4th Cir. 1968) 392 F.2d 155, 160; *Smith* v. *United States* (D.Md. 1967) 277 F.Supp. 850, 859; Gentile, *Fair Bargains and Accurate Pleas* (1969) 49 B.U.L.Rev.. 514, 530-531.

[18]The open declaration and recordation of plea bargains will also facilitate the legal and sociological study of that device, with a view toward further improving the administration of criminal procedure. (See Gentile, *Fair Bargains and Accurate Pleas* (1969) 49 B.U.L.Rev. 514, 530.

[19]Section 11557 states: "Every person who opens or maintains any place for the purpose of unlawfully selling, giving away or using any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the state prison for not more than 10 years."

is not an offense necessarily included in a violation of section 11530 (possession of marijuana). ▮ "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512]; *In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5].) ▮ Obviously, one can possess marijuana without also opening or maintaining a place where narcotics are sold or used; yet conviction of a violation of section 11557 requires proof of "opening" or "maintaining" such a place. (*People* v. *Horn* (1960) 187 Cal.App.2d 68, 72-73 [9 Cal.Rptr. 578]; *People* v. *Holland* (1958) 158 Cal.App.2d 583, 588 [322 P.2d 983].)

▮ When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. (*In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]; *People* v. *Wilson* (1969) 271 Cal.App.2d 60, 62 [76 Cal. Rptr. 195].) This reasoning rests upon a constitutional basis: "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess, supra,* 45 Cal.2d at p. 175.) Thus if the accusatory pleading adequately notifies the defendant that the People will seek to prove the elements of a lesser offense, the court has jurisdiction to convict of that lesser offense although the statutory definition of the lesser crime does not logically compose a part of the greater. (*People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456].)[20] ▮ Since a defendant who requests or acquiesces in conviction of a lesser offense cannot legitimately claim lack of notice, the court has jurisdiction to convict him of that offense. (*People* v. *Francis* (1969) 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Taylor* (1969) 273 Cal.App.2d 477, 485 [78 Cal.Rptr. 51]; *People* v. *Blunt* (1966) 241 Cal.App.2d 200, 204 [50 Cal.Rptr. 440]; *People* v. *Powell* (1965) 236 Cal.App.2d 884, 887-888 [46 Cal.Rptr. 417].)

▮ A defendant who knowingly and voluntarily pleads guilty or nolo contendere can hardly claim that he is unaware that he might be convicted of the offense to which he pleads; his plea demonstrates that he not only knows of the violation but is also prepared to admit each of its elements. (See *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) Although we could speak of defendant's plea as

---

[20]Accord: *People* v. *Collins* (1960) 54 Cal.2d 57, 59 [4 Cal.Rptr. 158, 351 P.2d 326]; *People* v. *Mayes* (1968) 262 Cal.App.2d 195, 199 [68 Cal.Rptr. 476]; *People* v. *Hensel* (1965) 233 Cal.App.2d 834, 838-839 [43 Cal.Rptr. 865].

an "implied" amendment of the information to add the charge to which defendant pleads (see e.g., *People* v. *Powell, supra,* 236 Cal.App.2d 884, 888), we see no need to fashion such a fiction; we hold that the court, in accepting a knowing and voluntary plea of guilty or nolo contendere, is not limited in its jurisdiction to the offenses charged or necessarily included in those charged.[21]

We recognize, however, that it is desirable that in a plea bargain the lesser offense to which a defendant pleads be one "reasonably related to defendant's conduct." (ABA Standards, standard 3.1(b)(ii).) "In this way, the defendant's record . . . , while not a completely accurate portrayal of his criminal history, will not be grossly misleading and thus will not likely result in inappropriate correctional treatment or police suspicion." (ABA Standards, p. 68.) ▮ In common practice and under the ABA standard a reasonable relationship between the charged offense and the plea obtains when (1) the defendant pleads to the same type of offense as that charged (the ABA Standards refer to this as a "categoric similarity"), or (2) when he pleads to an offense which he may have committed during the course of conduct which led to the charge.

Professor Newman notes that: "There appears to be an unexpressed but commonly followed practice of reduction to a count that bears some categoric similarity to the original charge. In homicide, for example, there may be reduction from murder to manslaughter or negligent homicide or, occasionally, even to assault, but grossly inconsistent offenses, such as larceny or possession of narcotics are never arbitrarily used in place of murder unless these offenses were part of the actual conduct involved." (Newman, p. 100; see ABA Standards, p. 68; Comment, *Judicial Plea Bargaining* (1967) 19 Stan.L.Rev. 1082, 1087 fn. 35.) Adopting the above stated ABA Standard, we find that defendant's plea met the first prong in that both the violation charged and the lesser crime to which defendant pleaded are offenses involving restricted drugs: the same type of offense.

In conclusion, we reiterate our conviction that the plea bargain plays a vital role in our system of criminal procedure; we would be loath to reduce its usefulness by confining it within the straight jacket of "necessarily included offenses." We emphasize, again, however, that the plea bargain can be viable only if it is candidly disclosed to the trial court and incorporated

---

[21]In the instant case defense counsel and the deputy district attorney stipulated that "for purposes of this case section 11557 of the Health and Safety Code is to be a lesser included offense of 11530 of the Health and Safety Code." Since we hold that the court's jurisdiction in accepting pleas of guilty or nolo contendere is not limited by the category of included offenses, we do not determine what legal effect, if any, can be given to this stipulation.

in the record of the case. Through that procedure the murky fog of subterfuge that now suffuses the plea bargain can be swept away.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J. concurred.

On December 30, 1970, the opinion was modified to read as printed above.