Filed 3/8/24  P. v. Johnson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KENNETH JOHNSON,<br><br>    Defendant and Appellant. | F086210<br><br>(Super. Ct. No.  F18900171)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Detjen, J. and DeSantos, J.

Defendant Kenneth Johnson pled no contest to second degree murder pursuant to a negotiated plea agreement. The trial court sentenced defendant to the negotiated term of 15 years to life in prison.

Defendant's appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, identifying no error and asking the court to determine whether there were any arguable issues on appeal. Defendant was afforded an opportunity to submit a supplemental brief but failed to do so in the time allotted. We have conducted an independent review of the record and find no error. We affirm.

## PROCEDURAL BACKGROUND

On October 1, 2019, the Fresno County District Attorney filed an information charging defendant with the murder of J.E. (Pen. Code, § 187, subd. (a);[1] count 1).

On March 2, 2023, defendant pled no contest to second degree murder on count 1 pursuant to a negotiated plea agreement. The plea agreement specified a term of imprisonment of 15 years to life. The parties stipulated that the trial court would find a factual basis for the plea in the preliminary hearing transcript and police reports pursuant to *People v. West*.[2] The trial court conducted a plea colloquy and found that defendant knowingly and intelligently waived his rights and entered the no contest plea.

On April 27, 2023, the trial court sentenced defendant to the stipulated sentence of 15 years to life in prison (§ 190, subd. (a)) and awarded him credit for 1943 actual days

---

[1]     All further statutory references are to the Penal Code except as otherwise noted.

[2]     *People v. West* (1970) 3 Cal.3d 595. In *In re Alvernaz* (1992) 2 Cal.4th 924, 932, the court characterized a *West* plea as a "plea of nolo contendere, not admitting a factual basis for the plea." Such a plea "allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence." (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.)

served.[3]  The court imposed a restitution fine in the amount of $10,000 (§ 1202.4, subd. (b)), a stayed parole revocation restitution fine in the amount of $10,000 (§ 1202.45, subd. (a)), and victim restitution in the amount of $4,908.97 (§ 1202.4, subd. (f)).  The court also imposed a $40 courtroom security fee (§ 1465.8, subd. (a)(1)), a $30 court facilities assessment (Gov. Code, § 70373).[4]

On May 2, 2023, defendant filed a notice of appeal.

## FACTUAL BACKGROUND[5]

On November 20, 2016, Fresno Police Detective Robert Holguin was assigned to the child abuse unit.  He responded to a hospital to investigate the death of 14-month-old J.E.  Holguin observed that J.E. had "a cluster of bruises on the chest[,] … a bruise on the abdomen just above the belly button, … a little cluster of bruises under the jawline, and … a cut to the ear."  J.E.'s body was then taken into the custody of the coroner's office.

Holguin then interviewed C.W., who was caring for J.E. and J.E.'s seven-year-old sibling on November 20, 2016, because the children's mother was out of town.  C.W. had the children go to a bedroom of her apartment to play because she was spraying insecticide in the kitchen.  After sending the children to the bedroom and continuing to

---

[3]   Pursuant to section 2933.2, subdivision (a), defendant was awarded no credit for good conduct.

[4]   The abstract of judgment reflects that defendant was sentenced pursuant to section 667.61.  That section governs sentencing for felony sex offenses.  Defendant was not convicted of a sex offense and that section did not govern his sentencing.  Rather, defendant's sentence was mandated by section 190, subdivision (a).  For that reason, we direct the trial court to issue an amended abstract of judgment reflecting that defendant was not sentenced pursuant to section 667.61.

[5]   Defendant stipulated that the trial court could rely on the preliminary hearing transcript and police reports to find a factual basis for the offense.  Our factual summary is based on the preliminary hearing transcript and probation officer's report (which summarized the Fresno Police Department crime reports).

spray, C.W. found J.E. in the kitchen with her and took J.E. back to the bedroom. Eventually, J.E.'s sibling came to C.W. and told her that J.E. was no longer breathing. C.W. heard J.E. take a breath when she picked him up. She then ran to a neighbor who called 911 and assisted with CPR. C.W. told Holguin that defendant, her boyfriend, was at the home before the injury to J.E.

Holguin interviewed J.E.'s sibling. The sibling told Holguin that she was outside playing with other children and came back into the apartment to use the restroom. She saw defendant "putting a frozen water bottle on [J.E.]'s stomach" and then "hit [J.E.] in the head with the water bottle." C.W. then entered the room, asked what happened to J.E., and ran to the neighbor with J.E. to call 911.

After conducting interviews, Holguin attended the autopsy by the coroner's office. The coroner noted the following external injuries: "a cluster of bruises on the chest, a cluster of bruises on the face below the chin, bruise on the stomach just above the belly button, and a bump on the back of the head." The coroner further noted the following injuries during an internal examination: a bruise to the small intestine, a split liver, hemorrhaging from the back of the small intestine, a blood clot between the skull and scalp, a bruise on the right temporal lobe of the brain, bruising to the left and right side of the collarbone, a subdural hematoma, hemorrhaging at the bottom left side of the brain, and hemorrhaging at the right side of the temporal lobe. The cause of death was blunt force trauma to the head and abdomen. The coroner opined that the injuries were from non-accidental trauma and determined the death to be a homicide. Based on the homicide determination, Holguin turned the investigation over to the homicide unit.

On November 21, 2016, Fresno Police Officer Victor Miranda took up the investigation into J.E.'s death in his role on the homicide unit. He followed up with the coroner regarding J.E.'s cause of death. The coroner opined that J.E.'s death resulted

4

from "great force caused by a punch or a kick to the victim's stomach area causing the liver to hit the spleen internally and causing [J.E.] to bleed internally."

Miranda obtained video surveillance footage from C.W.'s apartment complex. Miranda also interviewed C.W. She told him that she sent her two children and J.E.'s sibling outside to play because the odor of insecticide was so strong in her apartment. The surveillance video depicted the three children outside the apartment and C.W. and J.E. on the upstairs landing. C.W. told Miranda that she eventually told the children to come inside because it had started raining. One of her children refused and she walked with her child to an alley near "some type of parole live-in facility" with a "black wrought iron gate" and told him that she would lock him in "this cage" if he did not listen to her. The surveillance video confirmed that C.W. did walk with her son to the alley near the live-in facility. C.W. told Miranda she then returned to the apartment with her son. When she returned to the kitchen of the apartment, J.E.'s sibling approached her and told her that J.E. was not breathing. C.W. went to the room where J.E. was lying and confirmed that he was not breathing. C.W. directed J.E.'s sibling to go downstairs and tell the neighbor to call 911. C.W. then asked defendant, "What happened while [she] was gone? And, [w]hat did you do? Did you do anything? And he sa[id] no." C.W. then carried J.E. out of the apartment while a neighbor was already calling 911. She then found a different neighbor who knew CPR. That neighbor attempted CPR on J.E.

On November 22, 2016, Miranda spoke to defendant. He was not in custody at the time and was advised that he was not in custody. Defendant told Miranda that when C.W. took her son to the live-in facility, J.E. began crying. Defendant said he went to the kitchen to get a bottle for J.E. He then placed J.E. in a bedroom and went back to cleaning in another room. Several minutes later, he went back to the bedroom to check on J.E., put J.E. over his shoulder, and started to pat him. He then took J.E. to a second bedroom and placed him on the bed. Defendant, "at some point," got a water

5

bottle from the refrigerator and placed it on J.E.'s stomach because he noticed J.E. was not moving or breathing. Within a few minutes, C.W. returned home and J.E.'s sibling told C.W. that J.E. was not breathing. Defendant then went to the store to purchase a drink that C.W. had previously asked him to purchase.

Miranda asked defendant what injuries they would find that J.E. had suffered. Defendant said there should be no injuries. Miranda asked defendant why he placed a water bottle on J.E.'s stomach. Defendant answered that "he had picked up [J.E.] by the stomach and he … may have squeezed his stomach too hard when he picked him up." When asked to rate how hard he squeezed J.E. on a scale from one to 10, defendant said "four to five." Miranda asked the coroner whether squeezing J.E. could have caused the fatal injuries and the coroner said it could not have.

Miranda conducted a joint interview of C.W. and defendant on November 29, 2016. Neither was in custody and both were advised that they were not in custody. During the interview, C.W. left the room and defendant told Miranda that he "punched [J.E.] in the stomach one time" and demonstrated doing so with a closed fist.

In 2018, after defendant was arrested in relation to this case, Miranda interviewed him again. Defendant again acknowledged that he had punched J.E. with a closed fist. He demonstrated the movement by standing up, making a fist, and punching "in a soft motion."

Miranda viewed the surveillance camera videos and testified that they depicted C.W. walking down the stairway from her apartment with J.E. in her arms. The video did not depict J.E.'s head strike stairwell railing. However, Miranda acknowledged that the video angle did not allow him to see whether J.E.'s head may have struck the doorframe as C.W. exited her apartment.

6

## DISCUSSION

As noted above, defendant's counsel filed a *Wende* brief identifying no basis for relief and asking that we review the record to determine whether there were any arguable issues on appeal. Having carefully reviewed the entire record, we conclude that there is no arguable issue on appeal. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## DISPOSITION

The judgment is affirmed. The trial court is directed to issue a corrected abstract of judgment reflecting that defendant was not sentenced pursuant to section 667.61. The court shall forward a copy of the amended abstract to the appropriate entities.