Filed 4/9/14  P. v. Dlugitch CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058256 |
| v. | (Super.Ct.No. FWV1000051) |
| STEVEN ANTHONY DLUGITCH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael. A Smith, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Steven Anthony Dlugitch appeals after the superior court deemed his petition below to be a request for resentencing under Penal Code section 1170.126,[1] and then denied the petition. We affirm.

FACTS AND PROCEDURAL HISTORY

At the outset, we note that we have granted defendant's request, pursuant to Evidence Code section 452, subdivision (d), to take judicial notice of the record in defendant's earlier post-conviction appeal in this matter. (*People v. Dlugitch* (June 1, 2011, E051876) [nonpub. opn.].) The statement of facts and procedural history are taken primarily from the opinion in that case:

On January 6, 2010, San Bernardino County Sheriff's Deputies Dean and Peraza were in an unmarked patrol unit equipped with a red light and emergency siren. At 10:30 p.m., they saw defendant and Jennifer Ortiz exit from a room of a Travel Inn Motel in Ontario; they got into a silver Hyundai. Defendant was the driver. As the vehicle passed them, Deputy Dean noticed that it had very dark, tinted windows, a violation of the Vehicle Code.

The vehicle left the motel at a high rate of speed and rolled through two stop signs. Deputy Dean activated his red light. At that time, he noticed movement on the passenger side. Upon making contact with defendant, Deputy Dean smelled "a strong odor of fresh marijuana coming from the interior of the vehicle." Defendant stated that he was on active parole; a records check confirmed defendant's parole status.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

Defendant gave Deputy Dean permission to search the vehicle. A "hide-a-key" was found in the glove box, and a hotel room key was found between the passenger seat and the door. Ortiz stated that she and defendant had stayed in the room the night before, but were no longer staying there. She stated the room was in her name, but she had not completely paid for it. Defendant denied he was staying at the motel room; he just dropped off his property there.

Deputy Dean then went to the motel and spoke with the manager. The manager stated that the room, which was in Ortiz's name, was paid in full. Deputy Dean proceeded to search the room without the consent of Ortiz or defendant. The search revealed a digital scale, containing methamphetamine residue, on top of the refrigerator. A cell phone, woman's wallet, and purse were on the nightstand. The purse contained identification in the name of Ortiz. Another scale and 36 empty baggies were located by a large duffle bag containing men's clothing. Under the air conditioning unit, Deputy Dean found a hide-a-key similar to the one found in the vehicle. Inside was 3.4 grams of suspected methamphetamine. The officer also found photographs of defendant and Ortiz; one photograph was of defendant at Chuck E. Cheese throwing the "F" gang sign.

Deputy Dean had experience investigating gang crimes and has had contact with over 400 gang members. Deputy Dean was familiar with The Fontana Kings (TFK) gang, which had 75 documented members. The gang's primary activity was the sale of illegal narcotics. Deputy Dean was aware that two TFK members were convicted of robbery and for possession for sale of marijuana.

On the day defendant was stopped by Deputy Dean, defendant admitted that he was a TFK member, but not really active. Defendant stated that he stopped claiming the gang while he was in prison from 2004 through 2005. Deputy Dean testified that defendant's monikers are Vandal and Bandit, and the deputy identified photographs of defendant throwing gang signs. A tattoo with the letters "TFK" was on defendant's stomach.

Deputy Dean opined that the methamphetamine found in the motel room was possessed for sale because of the presence of baggies, scales, and the text messages found on Ortiz's cell phone. The deputy also opined that the possession of methamphetamine was for the benefit of TFK.

As a result of the investigation, defendant was arrested and charged by complaint, filed January 11, 2010, with one count of possession of methamphetamine (Health & Saf. Code, § 11378). The complaint also alleged that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)), and that defendant had suffered two prior strike convictions (§§ 1170.12, subd. (a), 667, subds. (b)-(i)). Before the preliminary hearing, defendant filed a motion to suppress evidence pursuant to section 1538.5. The court took evidence in the course of the preliminary hearing; it then denied the motion to suppress, and proceeded to hold defendant to answer on the charge.

Defendant renewed his motion to suppress evidence in the superior court. After the trial court denied defendant's renewed motion to suppress, defendant entered into a plea bargain with the prosecution. Defendant agreed to plead no contest to the charge in

4

count 1, possession of methamphetamine for sale, and to admit the gang enhancement, plus pleading no contest to six additional counts of possession for sale. In exchange, the prosecutor would dismiss one of the strike allegations so defendant would be sentenced as a second striker. Instead of facing 25 years to life as a third striker, defendant would be sentenced to a total determinate term of 18 years. The court's minutes note that the information was "amended by interlineation to allege" each of the new counts, counts 2 through 7, although no actual interlineations appear on the information. The court accepted the preliminary hearing transcript as establishing a factual basis for the pleas.

After receiving a probation report, the court sentenced defendant pursuant to the plea bargain, to the aggravated term of three years (doubled to six years) on count 1, plus the aggravated term of four years for the gang enhancement. On counts 2 through 7, the court imposed one-third the middle term (one-third of two years equals eight months) doubled to 16 months, each additional term to run consecutively to each previous count. The total term was 18 years in state prison, as agreed in the plea bargain.

Defendant filed a notice of appeal, raising as an issue the denial of his motion to suppress evidence. In June 2011, this court issued an opinion upholding the trial court's denial of defendant's motion to suppress evidence, and affirming the judgment.

In November 2012, the electorate approved Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), which amended sections 667 and 1170.12 and added section 1170.126. The Reform Act changed the requirements for sentencing a third strike offender to an indeterminate term of 25-year-to-life imprisonment. Under the original

5

version of the "Three Strikes" law, a recidivist with two or more prior strikes, who was convicted of any new felony, was subject to an indeterminate life sentence. However, the Reform Act altered the previous Three Strikes law, and now limits third strike sentences to current convictions of serious or violent felonies (or a limited number of other felonies). In other words, for an offender with two or more prior strikes, a current conviction for a nonserious, nonviolent felony no longer results in an indeterminate life sentence; rather, the offender is sentenced as a second striker.

On January 7, 2013, after passage of the Reform Act, defendant filed a petition for writ of habeas corpus in the trial court. Defendant asserted as grounds for relief that, at his original sentencing, he had been "threatened" by the trial court with a three strikes sentence if he did not take the plea offer of 18 years. Defendant explained: "I was givin the ultimatum of taking a 18 year deal including mostly 14 years enhancements or being sentenced under 3 strikes law & receiving 25-L[ife] for what is now a non-strikable offence. I was told by court to take deal or basicly recive life in prison. H&S 11378 even if I have two strikes now under 3 strikes law, can not recive life sentence for non-serious nonviolent crime. I would like to be re-sentanced."[2] Defendant explained that the issue raised in his petition was not raised in the prior appeal because the "[T]hree [S]trikes law was not changed yet."

The trial court deemed the habeas corpus petition to be a motion for resentencing pursuant to section 1170.126. The court found that defendant "does not satisfy the

_____

[2] Multiple spelling and grammatical errors in original.

6

criteria in PC 1170.126(e) and is not eligible." The court ruled that the "petition for recall of sentence is denied. Defendant was sentenced as a '2 striker' to a determinate term of 18 years. Defendant is not eligible for resentencing under PC 1170.126."

Defendant filed a timely notice of appeal from this ruling.

ANALYSIS

I. Although the Trial Court Erred in Treating Defendant's Habeas Corpus Petition as One for Resentencing Under Section 1170.126, No Purpose Would Be Served by a Reversal and Remand for Consideration as a Writ of Habeas Corpus

Defendant contends that the order denying his petition must be reversed because defendant had not made a motion for resentencing under section 1170.126; rather, his application was a petition for writ of habeas corpus. The People respond that the trial court properly construed the petition as one for resentencing under the reformed Three Strikes law, because throughout the petition, defendant requested resentencing and pointed to the Reform Act of 2012 as no longer authorizing a nonviolent current offense to be subject to three strikes treatment.

The Reform Act provides generally that new felony offenses, when a defendant already has two strikes, will no longer be subject to indeterminate life (third strike) sentences if the current offense is a nonserious, nonviolent felony. It also provides that, as to defendants who are already serving a three strikes indeterminate sentence, such defendants may petition for discretionary resentencing if the current offense, which resulted in the third strike indeterminate sentence, is a nonserious, nonviolent felony.

7

Here, defendant was never sentenced as a third striker. Rather, pursuant to plea bargain, he was sentenced as a second striker, with a determinate term of 18 years. Defendant therefore could not petition for resentencing as a third striker under section 1170.126; the trial court effectively recognized as much, for it denied the motion, as a petition for resentencing, on that ground. Section 1170.126 was simply not applicable.

For this reason, defendant maintains that the thrust of his allegations in the habeas corpus petition, notwithstanding his reference to the Reform Act and his requests for resentencing, was that he was effectively coerced into taking the plea bargain because he was "threatened" with the consequences of a third strike conviction: i.e., an indeterminate 25-year-to-life term. He argues that he capitulated to the 18-year determinate second strike sentence because of that "threat." When the law changed, however, it was no longer the case that an accused in defendant's position could be "threatened" with a third strike sentence as a consequence of a new nonserious, nonviolent charge. Defendant now argues that what he requested in his petition was not merely resentencing, but to withdraw the plea and sentence altogether, as if he could and should be placed in the position he was originally in, without the possibility of being presently "threatened" with a third strike sentence.

There is some merit to the position that, inasmuch as section 1170.126 was altogether inapplicable, because defendant was not sentenced as a third striker at all, the trial court erred in treating his habeas corpus petition as an application for three strikes resentencing. However, even if the trial court erred in failing to treat the habeas corpus

8

petition as a habeas corpus petition, we see no reason to remand to the trial court with directions to reconsider the matter as a proper writ petition.

Defendant urges that, because the trial court did not conduct an evidentiary hearing on the habeas corpus petition, there are no factual findings for this court to review. He maintains that the appropriate procedure is to issue an alternative writ returnable before the superior court, or to transfer the habeas corpus matter to the superior court for an evidentiary hearing, or, at a minimum, to have the superior court decide in the first instance whether an evidentiary hearing is warranted. (See *People v. Seijas* (2005) 36 Cal.4th 291, 307.) He also contends that no showing of prejudice is required, because the trial court essentially failed to exercise its discretion in making the order that it made, because it misunderstood the correct procedure. (See *Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1123-1124 ["A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order."].)

Defendant acknowledges that "a subsequent change in the law generally is not sufficient in and of itself to require the plea to be vacated," (citing *Brady v. United States* (1970) 397 U.S. 742, 756-758 [90 S.Ct. 1463, 25 L.Ed.2d 747]), but suggests that he "also asserted he was coerced into entering the plea, an allegation which should be explored."

9

Defendant's allegation of coercion does not, however, require any further exploration. The "coercion" that he asserts was applied to him was neither more nor less than the exposure he faced should he be convicted of the charge. That is, based on the felony charge alleged at the time the complaint was filed, defendant was subject to sentencing as a third striker to an indeterminate term of 25 years to life. However, a plea does not become involuntary or "coerced," merely because a reluctant defendant knows of the strength of the case against him or her, and of the possible penalty should a conviction result. (*In re Cowans* (1970) 2 Cal.3d 733, 740.) "The Supreme Court, in *Brady v. United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463], stated: 'We decline to hold . . . that a guilty plea is compelled and invalid . . . whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.' (397 U.S. at p. 751 [25 L.Ed.2d at p. 758].)" (*Ibid*.; cf. also, *People v. Jackson* (1980) 28 Cal.3d 264, 299 [mere exhortations to tell the truth are not improper police coercion].)

Even if we accept as entirely true defendant's claim that he agreed to the plea bargain for an 18-year determinate two strike sentence because he feared possible exposure to an indeterminate 25-year-to-life three strike sentence, the allegations of the habeas petition do not amount to a showing of coercion. At the time of the charges and plea, defendant *was* legally subject to a three strikes sentence as a result of the felony drug charge. A future change in the law cannot change the circumstances under which

10

defendant agreed to his plea bargain. Defendant has failed to show coercion, and therefore has failed to establish good cause to set aside his plea and sentence.

Because defendant cannot prevail on the merits of his habeas corpus petition, we decline to remand the matter for the superior court to consider the habeas petition, notwithstanding the trial court's mistaken treatment of defendant's petition as a request for resentencing under section 1170.126. "The law neither does nor requires idle acts." (Civ. Code, § 3532.) Section 1170.126 was simply inapplicable, but it would be an idle act to remand the matter for the court to consider the petition as a petition for writ of habeas corpus. Defendant's claim of coercion is patently without merit.

<u>DISPOSITION</u>

For the reasons stated, we affirm the trial court's ruling denying defendant's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
J.

We concur:


<u>RAMIREZ</u>
P. J.



<u>KING</u>
J.


11