Filed 8/28/14  P. v. Dambrose CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D065208 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD243104) |
| HOWARD P. DAMBROSE, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | **[NO CHANGE IN JUDGMENT]** |


THE COURT:

The opinion filed August 28, 2014 is modified as follows:

Page 1, paragraph 2 is modified to read "Elizabeth A. Missakian for Defendant

and Appellant."

There is no change in judgment.

 

 

BENKE, Acting P. J.

Filed 8/28/14 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>HOWARD P. DAMBROSE,<br><br>　　Defendant and Appellant. | D065208<br><br><br><br>(Super. Ct. No. SCD243104) |

APPEAL from a judgment of the Superior Court of San Diego County, Charles R. Gill, Judge. Reversed.

Elizabeth A. Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Howard P. Dambrose of obtaining a prescription by fraud/deceit (Health & Saf. Code, § 11173, subd. (a); count 1), but acquitted him of forgery of a

prescription for a narcotic (Health & Saf. Code, § 11368; count 2) and attempting to dissuade a witness from reporting a crime (Pen. Code,[1] §136.1, subd. (b)(1); count 3). The court sentenced Dambrose to three years summary probation and ordered him to pay numerous fines, fees, and assessments.

Dambrose appeals, arguing the trial court erred in excluding a defense witness from testifying as a discovery sanction and his trial counsel was ineffective for committing discovery abuse, not completing an examination of a witness during trial, and failing to investigate a key witness's criminal background. We conclude all of Dambrose's contentions have merit. Accordingly, we reverse.

FACTS

The Charges

The prosecution originally charged Dambrose with four counts: (1) counts 1 and 3 for obtaining a prescription by fraud/deceit (Health & Saf. Code, § 11173, subd. (a)); and (2) counts 2 and 4 for forgery of a prescription for a narcotic (Health & Saf. Code, § 11368). Counts 1 and 2 concerned a prescription request on January 20, 2012. Counts 3 and 4 involved a prescription refill on November 26, 2011.

Subsequently, the prosecution filed an information consisting of three counts: (1) obtaining a prescription by fraud/deceit (Health & Saf. Code, § 11173, subd. (a); count 1); (2) forgery of a prescription for a narcotic (Health & Saf. Code, § 11368; count 2); and (3) attempting to dissuade a witness from reporting a crime (§ 136.1,

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

subd. (b)(1)); count 3).  These counts only concerned the January 20, 2012 prescription request.[2]

The case proceeded to trial.

Prosecution

On January 20, 2012, at about 5:00 p.m., Ricky Rodela went to Dependent's Dental Center (DDC) for an emergency dental appointment because of an infected tooth. Dambrose was the only dentist at DDC at that time and treated Rodela.  After the procedure, Rodela stated he was still in excruciating pain.  Dambrose, however, was not licensed to prescribe medicine.  As such, he attempted to call other dentists employed by DDC to have them call in the prescription for him.  This was a typical occurrence in the office.

Rodela believed Dambrose left three phone messages, asking for a call back, and then Dambrose told Rodela to go to Walgreen's to pick up his prescriptions.  Rodela did not hear Dambrose tell his dental assistant to call in a prescription.

After failing to get a hold of any of the other dentists, Dambrose gave Norma Ford, his dental assistant, a post-it note with prescription information and a DEA number[3] written on it.[4]  Dambrose asked Ford to call in the prescriptions for him.  Ford,

---

[2]     At the preliminary hearing, the prosecution stated that it dropped the original counts relating to the refill of the prescription in November 2011 because it did not have sufficient evidence to proceed.

[3]     A DEA number is a number assigned to a health care provider (such as a medical practitioner, dentist, or veterinarian) by the U.S. Drug Enforcement Administration (DEA) allowing him or her to write prescriptions for controlled substances.  Legally, the

3

following normal operating procedures, called in the prescription request while Dambrose sat next to her. She recalled that one of the three medications she called in was Vicodin and another was an antibiotic. Notations about these prescriptions in Rodela's chart were not made by Ford. She did not remember if she gave the pharmacist the dentist's name or just the DEA number when she called in the prescriptions. Ford did not know Dambrose was not licensed to prescribe medication, and the DEA number Dambrose gave Ford on the post-it note belonged to Dr. Justin Nguyen, another dentist who worked at DDC. Ford had never called in any prescriptions for Nguyen. The only prescriptions she ever called in while working at DDC were the ones Dambrose requested when he handed Ford the post-it note on the evening of January 20, 2012.

The post-it note was not an exhibit at trial and Ford testified that she did not know what happened to it. She stated that she would not have thrown it away.

The next day, Rodela came back to DDC and complained that he was not able to pick up his prescriptions. Ford responded by stating that she had called in the prescriptions for Dambrose. Sheryl Wylie, an employee of DDC, overheard Ford's statement and approached her, asking if Ford called in a prescription at Dambrose 's request. When Ford affirmed she had, Wylie said, "You shouldn't have done that."

---

DEA number is solely to be used for tracking controlled substances. It is often used by the industry, however, as a general "prescriber number" that is a unique identifier for anyone who can prescribe medication.

4      According to a declaration signed by Ford on April 5, 2012, which she was provided to refresh her recollection at trial, the post-it note Dambrose handed her contained the pharmacy's name and phone number as well as a DEA number.

Wylie informed Ford that Dambrose had lost his DEA license in 2003 and, as a result, he is not allowed to call in prescriptions.

Later, Ford became aware that the DEA number Dambrose had given her to use belonged to Nguyen, who was out of the country on vacation when Dambrose asked Ford to request the prescription. When Nguyen returned to work, Ford told him what happened. Nguyen told Ford that he did not authorize the prescription and not to use his DEA number again.

Concerned about other unauthorized use of his DEA number, Nguyen spoke to a number of people and contacted an attorney. He also began reviewing his old patient charts. He noticed that on November 26, 2011, a refill prescription was authorized for a patient named Brittany Minderman. Nguyen did not recall authorizing a refill for Minderman and believed the records indicated that Dambrose improperly authorized it. Nguyen disclosed this apparent unauthorized refill, along with Rodela's unauthorized prescription, to Stephen Nicas, an investigator for the California Dental Board. Nguyen believed he made a copy of Minderman's chart and gave it to either Nicas when they first met or his attorney.

Ford also contacted the dental board and was subsequently interviewed by Nicas. After being informed of what happened, Nicas began investigating Dambrose. During this process, Nicas also interviewed Nguyen and obtained his prescription history reports. These reports disclosed that on January 20, 2012, prescriptions were requested under Nguyen's DEA number for Rodela. Nguyen told Nicas that he did not authorize these prescriptions.

5

When Dambrose realized Nguyen found out about the unauthorized prescriptions, he apologized and asked Nguyen repeatedly not to report anything to the dental board or the DEA. Dambrose was very apologetic and said that he was stupid. When Dambrose's requests not to disclose his unauthorized uses of Nguyen's DEA number went unanswered, he told Nguyen, "I thought we were friends" and that it would be best if Nguyen did not work at DDC any longer.

## Defense

Heather Johnson worked for Dambrose at DDC from August 2011 until he left the practice. She worked at the front desk and dealt, up to three times a day, with calling in prescriptions for patients if needed. When she started with DDC, she was told that Dambrose could not call in a prescription. Johnson had been around Dambrose when he was treating a patient who needed a prescription. Dambrose would explain to another dentist why the patient needed a prescription. The associate dentist then would approve and write the prescription. This process was the habit and custom of the office while Johnson worked at DDC. Johnson's experience of the way in which Dambrose obtained prescriptions for his clients was always during the daytime hours when another dentist was physically present in the office and could authorize the treatment.

Alice Van Dyken worked with Dambrose at DDC during 2011 through the end of 2012. She was assistant manager and insurance biller. She has known Dambrose since 1988. Dambrose purchased DDC from Dr. Norman Mittelman. Mittelman sold the business to Dambrose and stayed on as a consultant.

6

Van Dyken knew Dambrose could not write prescriptions for narcotics because he had surrendered his DEA license in 2003. To her knowledge, that fact was well known in the office. Dambrose would go to other dentists in the office when one of his patients needed a prescription. She had called in prescriptions for Dambrose; however, she never called in a prescription at Dambrose's request without another dentist's authorization. She did not recall ever calling in a prescription at night at Dambrose's request.

Toward the beginning of 2012, the working relationship between Ford and Dambrose was erratic. Many days, Ford worked well with Dambrose. On other days, Ford would be upset about something. On one occasion, Ford came to Van Dyken's office and complained, "I can't assist Dr. Dambrose anymore. He – my back hurts when I assist him." Then she became upset and said "Dr. Dambrose is ruining my life." Van Dyken admitted she is loyal to both Mittelman and Dambrose and is aware that Ford brought charges against Dambrose, both criminal allegations and charges to the California Dental Board.

Wylie worked with Dambrose from 2011 through the end of 2012 at DDC. She is Mittelman's daughter and was DDC's business manager. When she was hired, Wylie was informed that Dambrose could not write prescriptions for narcotics. Wylie confirmed all employees were told of this limitation.

Wylie stated there were standard procedures to call in prescriptions. She knew of a situation where Dambrose was treating a patient and needed a prescription. His habit and custom was to have another dentist authorize it.

7

Wylie worked with Ford and was familiar with the interactions between Ford and Dambrose. Ford had personality changes and a temper; she had a problem working with employees in the office and with many of the dentists.

## DISCUSSION

### I

### *EXCLUSION OF A DEFENSE WITNESS*

Dambrose contends the trial court committed reversible error when it excluded Minderman from testifying during the defense's case-in-chief. We agree.

### A. Background

During the preliminary hearing, six months before trial, Nicas testified about his investigation of Dambrose, including his interview with Nguyen. Nicas testified that after Nguyen was informed of Dambrose's misuse of Nguyen's DEA number, Nguyen reviewed his patient files for any other unauthorized uses of his DEA number. Nguyen told Nicas that he discovered that Dambrose improperly used his DEA number on November 26, 2011 for a prescription refill for Minderman.

During cross-examination, Dambrose's counsel attempted to introduce Minderman's dental chart to impeach Nguyen's statement to Nicas that Dambrose improperly authorized the refill. However, the court did not allow defense counsel to use a portion of Minderman's dental chart because he had not obtained Minderman's authorization to do so.

Immediately prior to trial, Dambrose's trial counsel disclosed his initial witness list that contained three defense witnesses: Johnson, Wylie, and Van Dyken. On the first

day of trial testimony, defense counsel informed the prosecutor for the first time that he was attempting to locate a fourth witness, Minderman.

At the beginning of the defense's case-in-chief, Dambrose's trial counsel informed the trial court that in addition to the three witnesses initially disclosed, he also would call Minderman.[5] Defense counsel intended to call Minderman to authorize the disclosure of a November 26, 2011 dental chart note that indicated a refill prescription for her was approved by Nguyen. He argued that the chart was relevant to impeach Nguyen. During the prosecution's case-in-chief, Nguyen had testified that he did not authorize the refill, but Dambrose had done so.

The prosecution objected to the late notification of Minderman as a defense witness. Dambrose's trial counsel told the prosecution that he did not previously disclose Minderman as a defense witness as he was a "busy dude" and had not been able to get in contact with Minderman until now because "the phone numbers [he had were] no good" and he did not locate her until just recently when he hired an investigator.

The trial court precluded Minderman from testifying based on a discovery violation: defense counsel's failure to timely disclose Minderman as a defense witness. The trial court noted that the potential relevancy of Minderman's medical chart was made clear during the preliminary hearing, which occurred over six months prior to trial, and thus, the court did not find good cause for the untimely disclosure.

---

[5] Dambrose's trial counsel also stated he intended to call Mittleman. The court excluded Mittlemen from testifying because of Dambrose's trial counsel's failure to comply with the discovery provisions. Because Dambrose is not challenging this ruling, we do not discuss Mittleman's exclusion further.

On September 11, 2013, after judgment was rendered, Dambrose filed a motion for new trial based on, in relevant part, the trial court's preclusion of Minderman as a defense witness. The prosecution opposed the motion.

The trial court denied the motion for new trial.

### B. Standard of Review and Applicable Law

We review a trial court's exclusion of evidence under the abuse of discretion standard. (*People v. Avila* (2006) 38 Cal.4th 491, 578.)

No order for discovery can be made in a criminal case except as provided in title 6, chapter 10 of the Penal Code. (§ 1054.5, subd. (a).) If the defense does not comply with its discovery obligations under section 1054.3, the trial court may make any order necessary to enforce those obligations, "including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).) Although a trial court has discretion in these matters, that discretion is not unfettered. "The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted." (§ 1054.5, subd. (c).) However, "prohibiting the testimony of a witness is not an appropriate discovery sanction in a criminal case absent a showing of significant prejudice and of willful conduct." (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1747, 1758 (*Gonzales*).)

10

## C. Analysis

Dambrose contends his Sixth Amendment right to confront witnesses was violated when the court excluded Minderman from testifying. Dambrose argues Minderman's testimony was necessary to provide permission for his use of her dental records to impeach Nguyen. Both of these contentions are well taken.

Here, the trial court did not consider or exhaust other sanctions before precluding the testimony of Minderman. Instead, the trial court focused on Dambrose's trial counsel's lack of good cause for failing to timely disclose Minderman as a witness. In doing so, the trial court did not heed the procedure set forth in section 1054.5, subdivision (c). As such, the trial court erred.

In addition, we find no support in the record that the prosecution would suffer significant prejudice if Minderman testified. The trial court made no mention of any prejudice the prosecution would suffer if Minderman testified. Moreover, the People's claim of prejudice in their respondent's brief is unavailing. There, the People contend they had no knowledge that Dambrose would call Minderman to testify at trial as a rebuttal witness. The People's lack of knowledge, however, does not explain how Minderman's testimony would have proved prejudicial. The People also claim they do not know what Minderman's dental chart contains. Again, this argument glosses over any explanation regarding the prejudicial impact of Minderman's testimony. Further, the People's claim that they do not know the contents of Minderman's dental chart rings somewhat hollow. The prosecution initially charged Dambrose with two counts related to a refill prescription for Minderman. Although they dismissed these charges, Nguyen

11

testified at trial that, based on his review of Minderman's dental chart, he believed Dambrose improperly authorized a refill of Minderman's prescription. Indeed, during trial, Nguyen had his recollection refreshed with a two-page declaration he signed regarding his conclusion that Dambrose improperly authorized Minderman's prescription refill and provided additional, more specific testimony about the incident. Therefore, the prosecution knew, prior to any indication that Dambrose planned to call Minderman as a witness, that at least Nguyen believed Minderman's chart would show that Dambrose had improperly authorized a prescription refill.

During trial, Dambrose's attorney made several objections to Nguyen's testimony regarding the refill prescription for Minderman, but the court overruled these objections. Apparently, both the trial court and the prosecution believed Nguyen's testimony to be relevant and important regarding Dambrose's actions in DDC's office. Moreover, because it was Nguyen's DEA number that Dambrose allegedly used, Nguyen's testimony at trial was important to the prosecution's case. As such, it logically follows that Dambrose would want to attack Nguyen's credibility at trial. To do so, Dambrose's trial counsel wanted to call Minderman as a witness so she could authorize the use of her dental chart and defense counsel believed he could use the chart to show that Nguyen was not being truthful about the refill prescription.

Although the right to present exculpatory evidence has limitations (see *Taylor v. Illinois* (1988) 484 U.S. 400, 410-411), on the record before us, we determine that it was error for the trial court to exclude Minderman from testifying and the court clearly abused its discretion by not exploring any other possible sanctions before excluding Minderman

12

from testifying (see § 1054.5, subd. (c); see also *Gonzales*, *supra,* 22 Cal.App.4th at p. 1758.) Dambrose's Sixth Amendment rights were violated.

A violation of the compulsory process clause is an error of constitutional magnitude. We therefore must determine whether the error was "harmless beyond a reasonable doubt." (*Chapman v. California* (1967) 386 U.S. 18, 24-25.) The People argue that even if the trial court erred in excluding Minderman's testimony, the error was harmless. We are not persuaded.

The prosecution's case depended largely on Nguyen's testimony, which included his claim that Dambrose had improperly authorized a refill of Minderman's prescription as well as his statement that he had not authorized anyone to use his DEA number. The trial court should have permitted Dambrose to challenge Nguyen's credibility by impeaching him with the use of Minderman's dental chart. This is especially true in a case such as this where the jury only convicted the defendant of one of the three charged crimes. Put differently, this was a very close case and the prosecution did not present an overwhelming case of guilt. Accordingly, we cannot, on the record before us, determine that the exclusion of Minderman's testimony was harmless beyond a reasonable doubt.

II

*INEFFECTIVE ASSISTANCE OF COUNSEL*

A. Background

Dambrose contends that his trial counsel rendered ineffective assistance. First, he claims his trial counsel was ineffective because he failed to timely disclose Minderman as a witness. As detailed above, Dambrose's trial counsel did not disclose that he intended

13

to call Minderman as a witness until after the prosecution finished its case-in-chief.  The record indicates that defense counsel explained his delay by commenting that he was a "busy dude" and had difficulty tracking down Minderman because the phone numbers he had were "no good."  The court excluded Minderman from testifying as a sanction for a discovery violation because of defense counsel's failure to timely disclose her as a witness.

Dambrose also contends his trial counsel was ineffective for failing to complete the examination of Johnson at trial.  At trial, defense counsel attempted to broach the subject of the refill of Minderman's prescription with Johnson:

> "Q.     Do you have any recollection of an incident that occurred in November of 2011 where the pharmacy contacted Dependents Dental Care for a Vicodin refill for Brittany Minderman?
>
> "A.     Correct.
>
> "Q.     Can you explain what you did when that occurred?
>
> "A.     The pharmacy actually called the office to okay a refill.
>
> "[Prosecution]:   Objection.  Lack of foundation.  Calls for hearsay.
>
> "THE COURT:  Sustained as to foundation.
>
> "[Defense Counsel]:  Let me rephrase, your Honor.
>
> "Q.     Did you consult with Dr. Nguyen giving authorization for the refill that was called in by the pharmacy?
>
> "[Prosecution]:   Objection.  Move to strike.  Calls for hearsay.
>
> "THE COURT:  Overruled.
>
> "[Defense Counsel]:  I have no further questions for this witness."

14

Finally, Dambrose claims that his trial counsel was ineffective because he did not investigate Ford's criminal background. Ford was a prosecution witness who called in the prescription for Rodela that led to the three charges against Dambrose. As part of her testimony during the prosecution's case-in-chief, Ford stated that she had no disciplinary actions since being licensed in 1990.

However, on October 22, 1985, a felony complaint was filed charging Ford with two counts of unlawfully obtaining aid for children not in fact entitled to, in an amount more than $400 in violation of Welfare and Institutions Code section 11483; two counts of perjury in violation of section 118; and one count of unauthorized participation in the federal food stamps program in violation of section 396. Ford ultimately entered a *West*[6] plea to a violation of Welfare and Institutions Code section 11483. Welfare fraud is a crime of moral turpitude. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1128.)

The record indicates that Dambrose's trial counsel did not investigate Ford's past criminal conviction, and accordingly, offered no evidence at trial about Ford's criminal background.

### B. The Law and Analysis

To show that trial counsel's performance was constitutionally defective, an appellant must prove: (1) counsel's performance fell below the standard of reasonableness, and (2) the "deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).) It is the defendant's burden to

---

6       *People v. West* (1970) 3 Cal.3d 595.

prove the inadequacy of trial counsel, and the defendant's burden is difficult to satisfy on direct appeal. Competency is presumed unless the record affirmatively excludes a rational basis for trial counsel's choice. (*People v. Ray* (1996) 13 Cal.4th 313, 349; *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.) We reverse on the ground of inadequate assistance only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)

"Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

Here, in regard to Dambrose's trial counsel's performance, the People do not attempt to justify defense counsel's actions and/or inactions or otherwise argue that defense counsel's representation of Dambrose did not fall below the standard of reasonableness. (See *Strickland*, *supra*, 466 U.S. at pp. 687-688.) We view the People's failure to contest the reasonableness of defense counsel's representation of Dambrose as a tacit concession that his representation fell below the standard of reasonableness.

In addition, we struggle to attribute any reasonable tactical decision explaining Dambrose's trial counsel's actions. As evidenced by the final jury verdict convicting Dambrose of only one of the three charged counts, this was a close case. Two of the prosecution's key witnesses were Nguyen and Ford. Dambrose allegedly used Nguyen's DEA number to order prescriptions for Rodela. Nguyen also testified that he believed

16

Dambrose had earlier improperly authorized the refill of Minderman's prescription. As such, Dambrose's trial counsel had every reason to challenge Nguyen's credibility. He neglected to do so by failing to timely disclose Minderman as a witness and continue his examination of Johnson.

In addition, the record shows that, despite defense counsel's claim to the contrary, Minderman was not difficult to locate. A declaration of a private investigator filed in support of Dambrose's motion for a new trial indicated that the investigator easily located Minderman through a basic, "industry standard" internet search. Thus, we are not convinced that defense counsel could not have easily located Minderman had he attempted to do so prior to trial. Accordingly, we see no reasonable justification for defense counsel's failure to timely disclose Minderman as a witness.

Likewise, we are perplexed by Dambrose's trial counsel's failure to complete his examination of Johnson. Nguyen had testified that he believed Dambrose authorized the refill of Minderman's prescription. Johnson apparently possessed knowledge regarding the subject refill. After the court sustained an objection to one of defense counsel's questions regarding the refill, defense counsel was able to rephrase the question to withstand an objection by the prosecution. Therefore, the court was going to allow Johnson to answer the question: "Did you consult with Dr. Nguyen giving authorization for the refill that was called in by the pharmacy?" However, Dambrose's trial counsel did not ask Johnson to answer the question after the court overruled the objection. Instead, he merely stated he had no further questions.

17

There is no reasonable tactical decision for defense counsel's action here. He was offering Johnson's testimony to attack Nguyen's credibility. He successfully rephrased his question to allow Johnson to discuss her interaction with Nguyen regarding the refill. Yet, defense counsel never had Johnson answer the question. In this context, Dambrose's trial counsel's action is nothing short of baffling.

Similar to defense counsel's actions with Minderman and Johnson, we also see no possible tactical justification for his failure to investigate Ford. Ford was Dambrose's dental assistant at the time Dambrose treated Rodela. She called in the prescription that led to counts 1 and 2. Further, Ford put her character at issue by stating she had no disciplinary actions since being licensed in 1990. However, defense counsel could have offered evidence that she had made a *West* plea to a crime of moral turpitude. This evidence could have impacted Ford's credibility. However, defense counsel did not offer any such evidence because he never investigated Ford's background. As she was one of the prosecution's key witnesses, it defies any rationalization why defense counsel would not have investigated her. This is especially true here where there also was evidence that Ford and Dambrose did not get along.

Having concluded Dambrose's trial counsel's performance fell below the standard of reasonableness, we next determine if Dambrose was prejudiced by his counsel's performance. (See *Strickland*, *supra*, 466 U.S. at pp. 687-688.) Prejudice flowing from criminal defense counsel's deficient performance is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*In re Hardy* (2007) 41 Cal.4th 977, 1018.) Reasonable

18

probability is a probability sufficient to undermine confidence in the outcome. (*Id*. at pp. 1018-1019; see *Strickland, supra,* at pp. 693-694, 697-698 ["reasonable probability" does not mean "more likely than not," but merely "probability sufficient to undermine confidence in the outcome"].) A more favorable outcome under this analysis includes a hung jury. (Cf. *People v. Soojian* (2010) 190 Cal.App.4th 491, 519-521.)

The People contend that Dambrose was not prejudiced by his trial counsel's deficient performance. They point out that no operative charges were related to the refill of Minderman's prescription. Further, the People argue there was overwhelming evidence of Dambrose's guilt as to count 1. To this end, the People emphasize that Ford testified that after Rodela's procedure was completed, Dambrose gave her a post-it note containing Nguyen's DEA number and prescription information and asked Ford to call in the prescriptions. The People also assert that it was uncontested that Nguyen was out of the country when Ford called in the subject prescriptions and he had not authorized the use of his DEA number. We are not persuaded.

Contrary to the People's position here, the evidence they rely on underscores the prejudice Dambrose experienced based on his counsel's deficient performance. The prosecution's case relied heavily on Nguyen's and Ford's testimony. As such, Dambrose was clearly prejudiced by his attorney's failure to challenge their credibility. It is reasonable that the jury may have been influenced to distrust Ford's testimony if it was aware of her welfare violation. She was the prosecution's only witness about the calling in of the prescriptions for Rodela. Further, the post-it note Ford claimed Dambrose gave her was not an exhibit at trial and apparently was not found. As such, the prosecution

19

was forced to rely predominately on Ford's recollection of the subject events. Any challenge to Ford's credibility, especially evidence that she had made a *West* plea to a crime of moral turpitude, could have had a significant impact on the jury.

Further, the People fail to appreciate the importance of Nguyen's credibility. Although it might have been uncontroverted that Nguyen was out of the country when Rodela's prescription was called in, the prosecution still relied on Nguyen's testimony that he had not authorized the use of his DEA number. To this extent, Nguyen's credibility was critical for the prosecution's case. Here, Nguyen might have wrongfully accused Dambrose of authorizing the refill of Minderman's prescription and there may have been evidence showing Nguyen actually authorized the refill. However, Dambrose's trial counsel never offered any evidence to challenge Nguyen's testimony about the refill. On the record before us, we cannot conclude that there was no reasonable probability that Dambrose would have received a more favorable outcome.

Again, this was a close case. The prosecution charged Dambrose with three counts, all based on the prescriptions for Rodela. The fact that the jury only convicted Dambrose of one of the counts highlights the weakness of the prosecution's case. We simply cannot say, without serious doubt, there is not a reasonable probability, absent Dambrose's trial counsel's deficient performance, that a different outcome would have occurred.

20

DISPOSITION

The judgment is reversed.


                                                            HUFFMAN, J.

WE CONCUR:


        BENKE, Acting P. J.


        McINTYRE, J.


21