Filed 12/1/22  P. v. Jimenez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. AQUILES JIMENEZ, Defendant and Appellant. | D079630 (Super. Ct. No. CR117399) |

APPEAL from an order of the Superior Court of San Diego County, Jay Bloom, Judge. Affirmed.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

In 1991, Aquiles Jimenez pled no contest to aiding and abetting second-degree murder (Pen. Code, § 187, subd. (a); count 2)[1] as part of a plea bargain under *People v. West* (1970) 3 Cal.3d 595 (*West*).  The parties stipulated to using the preliminary hearing transcript as the factual basis for the plea, and the balance of charges and allegations were dismissed.  The court sentenced Jimenez to an indeterminate term of 15 years to life.

In 2019, Jimenez filed a petition to vacate his convictions and for resentencing under amended section 1170.95 (now section 1172.6).[2]  After an evidentiary hearing, the trial court denied Jimenez's petition, finding that: (1) he was ineligible for relief under section 1172.6, and (2) even if eligible, the record evidence proved Jimenez's guilt under a still-valid theory of murder, beyond a reasonable doubt.

Jimenez contends on appeal that:  (1) the trial court erred in finding him ineligible for relief under section 1172.6 as amended by Senate Bill No. 775 (2020–2021 Reg. Sess.), and (2) the People failed to prove beyond a reasonable doubt that Jimenez acted with malice.

We conclude that regardless of whether Jimenez is eligible for relief under the expanded criteria of section 1172.6, substantial evidence supports the trial court's finding that Jimenez is guilty beyond a reasonable doubt, under current law, of directly aiding and abetting second-degree murder. Accordingly, we affirm.

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

[2]     Jimenez brought his petition under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without substantive change on June 30, 2022.  (See Stats. 2022, ch. 58, § 10, (Assem. Bill No. 200).)  We refer to the subject statute by its current number throughout this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Paul J.'s Killing*

In August 1990, Cynthia Wilson told an acquaintance that she was upset with the victim, Paul J., because of how he treated her when they were dating. Wilson told the acquaintance that she wanted to obtain a gun to shoot Paul J. to "put him out of his misery." Around that time, Wilson began dating Jimenez, and she told him that she was afraid of Paul J. and that he had hurt her emotionally. Jimenez, who sold and used methamphetamine, knew Paul J. was a drug dealer. Jimenez was also a gun collector, and at Wilson's request, he took her out to practice shooting with one of his guns.

On the evening of September 9, 1990, Paul J. asked the night clerk at the Sweetwater Inn in National City if he could borrow his car. Paul J. also asked to use a room at the hotel so he could speak with Wilson. The clerk, who knew Paul J., agreed to lend him his car and said he could use a room later. After Paul J. left the hotel, Wilson called the clerk to ask whether Paul J. was staying there. The clerk confirmed that he was, and gave Wilson Paul J.'s room number. After Paul J. returned, the clerk gave him room keys and Paul J. went up to his room.

Around 4:00 a.m., Wilson asked Jimenez to drive her to the hotel to meet with Paul J. According to Jimenez's statements during a 2015 parole hearing, Wilson had been using methamphetamine that night. Jimenez was not using drugs at the time because he was on pain medication for a work-related injury. When they got to Paul J.'s room, Paul J. offered Wilson methamphetamine and went to the bathroom to prepare the drugs, where Wilson and Paul J. began arguing. Jimenez was adjusting the radio when Wilson pulled out a small pistol that Jimenez usually kept in his truck's glove compartment and shot Paul J. a few times. Jimenez said during his parole

3

hearing that he did not realize Wilson had taken his gun until that moment, and that she had hidden it under her jacket. He also denied knowing that Wilson was going to shoot Paul J.

After Wilson first shot Paul J. and he fell to the floor, Jimenez pulled the phone out of the wall socket to prevent Paul J. from calling anyone. During his probation interview, Jimenez said he heard Paul J. ask, "Oh my God, why did you shoot me?" Wilson then asked Jimenez to also shoot Paul J., but when Jimenez refused, she shot Paul J. again herself. Jimenez then took the gun from Wilson and they left the hotel in Jimenez's truck.

Jimenez told a probation officer that he thought Paul J. was still alive when they left the hotel room. Wilson called the hotel's front desk 15 minutes after they left, asking to speak with Paul J. The clerk tried a few times to call Paul J.'s room, but no one answered. Later that night, Jimenez threw the gun over the Coronado bridge.

Around 6:20 a.m. the following morning, the clerk went up to Paul J.'s room and found him dead. An autopsy determined that he died from two gunshot wounds through the chest and back. During a subsequent search of Jimenez's residence, law enforcement officers found ammunition matching the type found in Paul J.'s room.

*B. Jimenez's Petition for Resentencing*

In 1991, Jimenez pled no contest to aiding and abetting second-degree murder (§ 187, subd. (a); count 2) as part of a plea bargain under *West*, *supra*, 3 Cal.3d 595. Jimenez filed a petition for resentencing in 2019 under amended section 1172.6. After appointing counsel, finding that Jimenez had established a prima facie case of entitlement to relief, and issuing an order to show cause, the trial court held an evidentiary hearing to determine whether Jimenez was entitled to relief.

During the hearing, the court admitted as part of the record of conviction the preliminary hearing transcript, the change of plea form, the change of plea hearing transcript, Jimenez's statements from the probation report, and his 2015 parole hearing transcript. The People did not seek to admit Jimenez's post-arrest statement and a statement by the individual who sold Jimenez the murder weapon. The People did seek to admit Wilson's probation report and parole hearing transcript, which included Wilson's statements that Jimenez knew she intended to kill Paul J., that he supplied her with the gun she used to shoot Paul J., that Jimenez offered to have Paul J. killed, that Jimenez told her to bring the gun when they got to the hotel, that Jimenez instructed her to shoot Paul J., and that Jimenez fixed the gun after it jammed so that she could shoot Paul J. more than once. The court excluded those documents and the statements therein as inadmissible hearsay.

After the hearing, the trial court issued a written order denying Jimenez's petition, finding that he was ineligible for relief under section 1172.6 because he "was not charged in such a way that the prosecution could proceed on a felony-murder or natural and possible consequences theory." Citing *People v. Nguyen* (2020) 53 Cal.App.5th 1154 (*Nguyen*), the court

found no evidence that a theory of murder invalidated by section 1172.6 "was lurking somewhere in the case."

Alternatively, the court found that the record evidence proved Jimenez's guilt as an aider and abettor beyond a reasonable doubt. The court noted that Jimenez had weapons and ammunition at his residence that matched the murder weapon, he drove Wilson to the hotel, he "did nothing to stop the first or subsequent shots," and he admitted to pulling the phone out of the wall while Paul J. was still alive. The court found that Jimenez supplied Wilson with a gun, he went shooting with her, and he knew that Wilson "hated the victim." The court further noted that Jimenez did not attempt to render aid to the victim or report the crime to the police, and he disposed of the murder weapon.

The court concluded that it must deny Jimenez's petition "[g]iven the lack of evidence felony-murder or natural probable consequences were an issue here," and alternatively, because it found that the People met their burden of establishing, beyond a reasonable doubt, that Jimenez aided and abetted in Paul J.'s murder.

Jimenez timely appealed the order.

DISCUSSION

Jimenez first contends that the trial court erred in finding him ineligible for relief under section 1172.6 as amended by Senate Bill No. 775 (2020–2021 Reg. Sess.), because in doing so the court relied on an outdated interpretation of section 1172.6. After the court denied Jimenez's petition, Senate Bill No. 775 expanded the scope of section 1172.6 to include cases where a defendant was convicted of murder under "any theory under which malice is imputed to a person based solely on that person's participation in a crime," not just under a felony murder or natural and probable consequences

6

theory. (Stats. 2021, ch. 551, § 2.) Jimenez contends that the court erred in following *Nguyen*, *supra*, 53 Cal.App.5th at pages 1166–1168, which held that a petitioner who pled guilty to second degree murder was ineligible for relief as a matter of law because the "transcripts from the preliminary and plea hearings demonstrate[d] [he] was convicted of second degree murder as a direct aider and abettor," as that "was the only theory put forth by the prosecutor[.]" In following *Nguyen*, the trial court rejected the contrary holding of *People v. Rivera* (2021) 62 Cal.App.5th 217 (*Rivera*), which held that the lack of any "preplea record of an underlying offense that could support liability for felony murder or murder under the natural and probable consequences doctrine[]" is not a bar to section 1172.6 relief. (*Rivera*, at p. 238.)

In addition to challenging the trial court's ruling on his *eligibility* for relief, Jimenez argues there was insufficient evidence to support its alternative finding that he acted with implied malice and was guilty of second degree murder under current law. Specifically, he asserts the admissible evidence did not show that he knew what Wilson planned to do, that he encouraged Wilson to shoot Paul J., that he acted with reckless indifference in failing to assist Paul J., or that he could have restrained Wilson.

We conclude that regardless of whether Jimenez is *eligible* for relief under the expanded criteria of section 1172.6, substantial evidence supports the trial court's alternative finding that Jimenez is guilty beyond a reasonable doubt of directly aiding and abetting second-degree murder under current law. Accordingly, we need not resolve the conflict between *Nguyen* and *Rivera* regarding eligibility for relief.

7

We review the trial court's factual findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*).) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid*.) We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

Regarding Jimenez's crime of conviction, "second degree murder . . . is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' [Citation.] . . . 'Malice is implied when the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " [Citation.] In short, implied malice requires a defendant's awareness of engaging in

8

conduct that endangers the life of another. . . .' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)

Viewed in the light most favorable to the trial court's ruling, the totality of the evidence is sufficient to support the trial court's finding that Jimenez is guilty of second degree murder under current law. The month before the shooting, Wilson told an acquaintance that she wanted to shoot Paul J. because of how he had treated her when they were dating. Around the same time, Wilson also began dating Jimenez and told him she was afraid of Paul J. and that he had hurt her emotionally. At Wilson's request, Jimenez took her practice shooting with one of his guns, then on the night of the shooting, he drove Wilson to the hotel with a loaded gun in his truck to meet Paul J. in the middle of the night, knowing that Wilson had been using drugs. The trial court could reasonably infer from this evidence that when Jimenez drove Wilson to the hotel, he knew Wilson intended to shoot the victim and supplied the gun she used.[3]

This inference is further supported by Jimenez's conduct during and immediately after the shooting. According to what Jimenez told a probation officer, there was a break in the shooting when Paul J. was still alive and Wilson asked Jimenez to shoot him, during which Jimenez could have intervened and prevented Wilson from firing additional shots. But instead, after Wilson first shot the victim, Jimenez pulled the phone out of the wall

---

[3] Jimenez argues in his opening brief that the trial court erred to the extent it relied on Wilson's hearsay statements in Jimenez's probation report, particularly her statement that Jimenez supplied her with a gun. However, the People concede, and the record shows, that the court excluded Wilson's statements as inadmissible hearsay and only admitted Jimenez's own statements from his probation report. Even without this excluded evidence, the record supports a reasonable inference that Jimenez supplied Wilson with the gun she used.

9

socket to prevent Paul J. from calling anyone for help. After the shooting ended, Jimenez took his gun from Wilson, fled the scene with her, and disposed of the murder weapon without alerting any authorities. These facts all support the court's finding that Jimenez knowingly aided and abetted an implied malice murder. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599 ["It is well-settled that the presence at the scene of the crime and failure to prevent it, companionship and conduct before and after the offense, including flight, are relevant to determining whether a defendant aided and abetted in the commission of the crime."].)

Jimenez cites *People v. Ramirez* (2021) 71 Cal.App.5th 970 (*Ramirez*), in which the Court of Appeal reversed the denial of a defendant's section 1172.6 petition as to his first-degree felony murder conviction based on his participation in an attempted carjacking. Jimenez argues that his situation is comparable to the defendant in that case because Jimenez did not appreciate how badly Paul J. was wounded. But unlike in *Ramirez* and similar cases, Jimenez heard and saw Wilson shoot Paul J. multiple times, and he heard the victim say that he had been shot. (Cf. *Ramirez*, at p. 989 ["There is no evidence [defendant] had an opportunity to help [the victim] . . . or that [defendant] knew [the victim] had been wounded by the gunfire."]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1025–1026 [insufficient evidence defendant acted with reckless indifference to human life because "[a]t the time of the shooting, he was across the street and he did not see or know if anyone was shot or hurt."].) It was reasonable for the trial court to infer from the evidence that Jimenez, who was not under the influence of illicit drugs at the time, appreciated the seriousness of Paul J.'s injuries when he pulled the phone from the wall, declined to take his gun from Wilson in the middle of

10

the shooting even though he had a chance to do so while Paul J. was still alive, and then fled the scene with Wilson and disposed of the gun.

Jimenez also argues that like the defendant in *Ramirez*, the evidence does not show that he was close enough to restrain Wilson. (See *Ramirez*, *supra*, 71 Cal.App.5th at p. 989 [noting [defendant] was "not 'close enough to exercise a restraining effect on the crime' " because he was on the other side of the vehicle when shooting began].) We disagree. Jimenez was in the same hotel room, and he could at least have taken the gun from Wilson when she paused to ask him to shoot the victim. By Jimenez's own admission to the probation officer, Wilson was essentially offering to hand the gun to him before the shooting was over while the victim was still alive. Unlike in *Ramirez,* where the defendant had "no realistic opportunity to intervene[,]" Jimenez did have a clear opportunity to prevent further injury to Paul J. when he was still alive. (See *Ibid*.)

Jimenez further contends that the admissible evidence does not show he specifically encouraged Wilson to shoot Paul J., or that he knew Wilson had a propensity for violence. Jimenez also claims that Wilson took his gun without his knowledge, and that his youth at the time made it difficult to fully appreciate the gravity of the situation. But even assuming that the trial court could have drawn different inferences, our task is not to reweigh the evidence. (See *Clements*, *supra*, 75 Cal.App.5th at p. 298; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' "].) Viewing the evidence and drawing all reasonable inferences in the light most favorable to the court's order, as we must, there is substantial evidence to support its ruling.

11

Accordingly, we find no reversible error in the trial court's decision to deny Jimenez's petition for resentencing on the basis that he is guilty beyond a reasonable doubt of aiding and abetting second-degree murder under current law.  For this reason, we need not, and do not, decide the threshold issue of Jimenez's eligibility for relief under the expanded criteria of section 1172.6.

DISPOSITION

The order denying Jimenez's section 1172.6 petition for resentencing is affirmed.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.



HUFFMAN, J.

12