Filed 6/9/25  P. v. Quintana CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COUART OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B336518 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA091383) |
| v. | |
| DANIEL PAUL QUINTANA, et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, James D. Otto, Judge.  Reversed and remanded with instructions, and affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Paul Quintana.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant Maximiliano Venegas, Jr.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

---

## I. INTRODUCTION

Defendants Daniel Paul Quintana and Maximiliano Venegas, Jr. appeal from the trial court's orders denying their petitions for resentencing under Penal Code section 1172.6.[1] We reverse the order denying Quintana's petition and remand for further proceedings, but affirm the order denying Venegas's petition.

## II. FACTUAL BACKGROUND[2]

Around dusk on January 30, 2012, former Westside Wilmas gang member Ivan Zamora was walking in the city of Wilmington, California when four males in a white car pulled up to his location. He recognized them as Westside Wilmas gang

---

[1] All further statutory references are to the Penal Code.
The Legislature renumbered section 1170.95 as section 1172.6 effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) For clarity, we will refer to section 1172.6 throughout this opinion.

[2] As explained below, the facts are taken from the transcript of defendants' preliminary hearing which was included in our record by augmentation order.

members Venegas, Quintana, Baby Toro, and Topo. Topo asked Zamora where he was from, and when Zamora identified himself, Topo and Baby Toro showed him their guns and then the car drove off.

That same night, around 9:00 p.m., Jairo Diaz was on his way home from a liquor store in Wilmington with his two friends, murder victims Gabriel Castillo and Carlos Regalado, when they were approached by a group of about four men near Watson Avenue and Mauretania Street. Believing the men had bad intentions, Diaz and Castillo ran back toward the store. As they were running, Diaz heard gunshots and, as he arrived at the store, he felt his back, saw blood on his hand, and discovered he had been shot five or six times. He then saw Castillo on the ground and, because he was not breathing, knew he was dead.

The following day, Zamora, who had heard about the shooting, saw Venegas and asked him about it. Venegas said that he and his companions "saw [Eastside Wilmas gang members] by the liquor store so he parked on Watson, got out and shot the victims."

Los Angeles Police Department Officer Michael Villareal responded to the scene and observed Castillo's body outside the liquor store and Regalado's body near the intersection of Watson and Mauretania. Two days later, he interviewed Diaz in the hospital who explained that one of the men who approached him and the murder victims on the street asked them where they were from and then said, "'Fuck the cheese.'"[3]

---

[3] Los Angeles Police Department Officer Robert Hargrove, a gang expert, confirmed that defendants were Westside Wilmas gang members and that the phrase "Fuck the cheese" was a derogatory term for the rival Eastside Wilmas gang.

On February 14, 2012, Officer Villareal interviewed Quintana who told him that, on the day of the shooting, three of his friends were driving in a stolen Honda when an Eastside Wilmington gang member shot at their vehicle, wounding one of them. Later that evening, Quintana joined Venegas and three other companions, and Venegas drove them to the east side of Wilmington in search of rival gang members to shoot. Venegas was armed with a sawed-off shot gun and two of the others were armed with handguns. According to Quintana, when he and his companions saw three males walking southbound on Watson Avenue, Venegas made a U-turn and stopped at the corner of Watson and Mauretania. All five males exited the vehicle and surrounded the three victims, with one of Quintana's companions asking the victims where they were from and saying, "[F]uck the cheese." Two of Quintana's companions then began shooting and, when two of the victims ran, those two companions followed them. Quintana saw one of the three victims on the ground and returned to the car which then followed his two companions, picked them up, and drove away.

## III.   PROCEDURAL BACKGROUND

A.   *Information, Trial, and Plea*

In an information filed on October 29, 2012, the Los Angeles County District Attorney (District Attorney) charged Quintana and Venegas in count 1 with the murder of Regalado in violation of section 187, subdivision (a); in count 2, with the murder of Castillo in violation of section 187, subdivision (a); and in count 3 with attempted murder in violation of sections 664 and

4

187, subdivision (a).  The District Attorney alleged, as to counts 1 and 2, the special circumstance that defendants committed more than one offense of murder within the meaning of section 190.2, subdivision (a)(3).  The District Attorney further alleged as to each count that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C) and that a principal used and discharged a firearm causing great bodily injury within the meaning of section 12022.53, subdivisions (a) through (e).

On September 3, 2013, a jury found Venegas guilty on all three counts and found true the special circumstance, gun use, and gang allegations.  The trial court sentenced him to life without the possibility of parole on count 1, a concurrent sentence of life without the possibility of parole on count 2, and a concurrent sentence of 40 years to life on count 3.

On July 22, 2014, Quintana entered into a plea agreement pursuant to which the trial court granted the prosecution's motion to amend the information to add counts 4 and 5, which charged defendant with manslaughter in violation of section 192, subdivision (a), and to add a gang allegation as to those counts. During the plea colloquy, the court asked Quintana's counsel: "Counsel, join in the waivers, approve of the plea, stipulate to a factual basis based on the trial testimony?"  His counsel responded:  "Yes.  This is a People versus West[4] plea." Quintana then pleaded no contest to the new charges and admitted the gang allegation in return for the dismissal of the three original counts.  The court sentenced Quintana to an aggregate term of 32 years in prison.

---

4        *People v. West* (1970) 3 Cal.3d 595.

B.  *Section 1172.6 Petitions*

On April 24, 2023, Venegas filed a petition for resentencing pursuant to section 1172.6.  The District Attorney opposed the petition, arguing that Venegas was ineligible for relief because he aided and abetted the murders and was a major participant in the commission of the offenses.  Venegas filed a reply.

On June 2, 2023, Quintana filed his petition for resentencing.  The District Attorney opposed the petition, arguing that, "[i]n the present matter, Quintana entered a plea . . . .  In the plea, the court specifically had the defense stipulate to a factual basis based on the trial testimony.  Based on how the crime was committed, Quintana would be ineligible for the benefits of section [1172.6] as a matter of law, as he was an aider and abettor to the murder and was a major participant in the underlying felony.  Quintana has failed to make a prima facie showing that he is entitled to relief.  The trial court did not give jury instructions on felony murder, natural and probable consequence murder, or any other theory of culpability that would entitle Quintana [to] relief."

On January 23, 2024, the trial court held a hearing on both petitions for resentencing.  Venegas's counsel submitted on the papers, and Quintana's counsel argued that his client "was convicted via plea to two counts of voluntary manslaughter.  So the record of conviction based on just those convictions actually show[s] that there was no malice found since there's no malice required for voluntary manslaughter."

The prosecutor argued that "just based on . . . how this crime happened, the fact that there was a factual basis stipulation taken by the court, there's no way to get around the

fact that [Quintana] is not eligible for relief under [section] 1172.6."

Following argument, the trial court denied the petitions of both defendants, explaining that "based on the record of conviction, without making any decisions on credibility or anything like that, it's clear that there is no prima facie case that can be made for either defendant in this case."

Defendants filed timely notices of appeal.

## IV.    DISCUSSION

### A.    *Section 1172.6 and the Prima Facie Stage*

"The Legislature enacted Senate Bill [No.] 1437 [(Senate Bill 1437)] 'to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1(b).)" (*People v. Curiel* (2023) 15 Cal.5th 443, 448 (*Curiel*).) "Senate Bill 1437 altered the substantive law of murder in two areas.  First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. . . .  [¶]  Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder.  (§ 188, subd. (a)(3).)  'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*Id.* at pp. 448–449.)

"Senate Bill 1437 also enacted former section 1170.95 [renumbered as section 1172.6], which created a procedural

7

mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) "'[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019," the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3)).' [Citation.] 'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c); [citation].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); [citation].) If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." (§ 1172.6, subd. (c).)' [Citation.]" (*Curiel, supra*, 15 Cal.5th at p. 450.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he "prima facie bar was intentionally and correctly set very low.'" (*Id.* at p. 972.) A court

8

examining whether a defendant who has entered a plea has made a prima facie case may look to the preliminary hearing, even if the defendant did not adopt the preliminary hearing transcript as a factual basis for the plea. (*People v. Patton* (2025) 17 Cal.5th 549, 569, fn. 12 (*Patton*).)

## B.  *Quintana's Petition*

Quintana contends that the trial court erred because "the evidence and jury instructions at [Venegas's] trial are no[t] part of . . . Quintana's record of conviction and therefore provide no legitimate basis for the summary denial of [his] resentencing petition." Quintana also argues that to the extent the court relied on the preliminary hearing transcript, it erred because he did not stipulate that it contained the factual basis for his plea.[5] And, he maintains that, even assuming that the transcript is part of his record of conviction, it does not demonstrate as a matter of law that he was ineligible for resentencing.

The Attorney General agrees that the trial "court erred in relying upon the evidence presented and the jury instructions given at . . . Venegas's trial." The Attorney General also concedes that although a trial court may rely upon a preliminary hearing transcript at the prima facie stage, in this case the transcript does not demonstrate, as a matter of law, that Quintana was

---

[5]  At the time Quintana filed his opening brief, there was a split in authority as to whether a preliminary hearing transcript was part of the record at the prima facie stage of the section 1172.6 analysis. After this matter was fully briefed, the Supreme Court issued its opinion in *Patton, supra*, 17 Cal.5th 549.

9

ineligible for resentencing and the order denying his resentencing petition should therefore be reversed.

We agree with the parties that the evidence and instructions from Venegas's trial are not part of Quintana's record of conviction and the trial court erred in relying on them. We also conclude that the court did not err in considering the preliminary hearing transcript at the prima facie stage but agree with the parties that the transcript does not demonstrate, as a matter of law, that Quintana was ineligible for resentencing because it did not indisputably establish that Quintana was an aider and abettor to the murders or that he was a major participant in the underlying felonies. We therefore reverse and remand with instructions.[6]

C.    *Venegas's Petition*

Venegas's notice of appeal reflects that his appeal is taken from the trial court's postjudgment order denying his resentencing petition. On that ruling, appointed counsel for Venegas filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 conceding there are no cognizable issues on his appeal. Venegas then filed his own letter brief raising ineffective assistance of counsel, including references to counsel's failure to cite his disciplinary history, failure to conduct discovery and file a

---

[6]    Because the Attorney General concedes that the court erred and defendant should be afforded an evidentiary hearing on his resentencing petition, Quintana's related due process challenges are moot. (See *People v. Spring* (1984) 153 Cal.App.3d 1199, 1208 [where appellate claim is resolved under state law, appellant's constitutional claims are moot].)

10

"Brady" motion, and failure to argue that Venegas's age at the time he committed the offenses rendered his life without the possibility of parole sentences illegal.

Because none of Venegas's challenges on appeal appear to be directed at alleged trial court errors during the proceedings on his resentencing petition, we agree with the Attorney General that his challenges are not cognizable on appeal from an order denying relief under section 1172.6. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].)

## V.   DISPOSITION

The order denying Quintana's petition for resentencing under section 1172.6 is reversed and remanded with instructions to issue an order to show cause and hold an evidentiary hearing. The order denying Venegas's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

12